HARLEY L. BURNS, Appellee, v. CITY OF WATERLOO, Appellant.

**MUNICIPAL CORPORATIONS:** Streets and Alleys—Negligence—
1 **Sidewalks—Sufficiency of Evidence.** Evidence reviewed, in an action against a city for injuries from a fall on an icy sidewalk, and negligence of the city held to be a question for the jury.

**WITNESSES:** Competency — Privileged Communications — Physi-
2 cian. The observation by a doctor of a patient whom he was called to attend within a short time after the latter had been brought home, that the patient was in an intoxicated condition, is privileged, within Sec. 4608, Code Supp., 1913.

**WITNESSES:** Competency—Privileged Communications—Waiver.
3 Evidence reviewed, and *held* that the privilege of plaintiff as to the right to object to testimony of a physician as to his intoxicated condition had not been waived by the introduction in chief of testimony of plaintiff's wife.

**APPEAL AND ERROR:** Shifting Grounds on Appeal. Appellant
4 will not be permitted, in his reply brief, to shift his grounds, and raise a question not raised in the trial court.

*Appeal from Black Hawk District Court.*—H. B. BOIES, Judge.

JULY 2, 1919.

SUPPLEMENTAL OPINION ON REHEARING, NOVEMBER 22, 1919.

ACTION for damages for personal injuries resulting from a fall upon an icy sidewalk of defendant. There was a verdict for the plaintiff, and the defendant appeals.— *Affirmed.*

*Burr A. Brown* and *Edwards, Longley, Ransier & Harris,* for appellant.

*Reed, Tuthill & Reed,* and *Pickett, Swisher & Farwell,* for appellee.

EVANS, J.—At about 8 o'clock in the evening of February 1, 1917, the plaintiff fell, upon one of defendant's sidewalks. He was rendered unconscious by the fall, as alleged, and remained exposed to the weather for an appreciable time before he was found. The weather was 20 below zero. The plaintiff's hands were so frozen that all the fingers and thumbs had to be amputated. The plaintiff is a musician by profession, and was occupied in playing at the vaudeville theater of that city. There was evidence on the part of the city that the plaintiff was in an intoxicated condition at the time of his fall, and that this was the cause thereof. This assumption was contradicted by the testimony of many witnesses. Two errors only are assigned as grounds of reversal: (1) That a verdict ought to have been directed for the defendant; (2) that the court erred in sustaining objections as privileged, to the testimony of defendant's witness, Dr. Hadley. This witness was the physician of the patient, and was called to attend him at his home, on the evening of the accident.

I. As to the first error assigned, we have read the evidence carefully, and reach the conclusion that it presented a question of fact for the jury. The actual condi-

tion of the sidewalk at the place of the ac-
cident was concededly bad.  The real con-
tention for the city is that the weather, for
ten days preceding the accident, had been
constantly severe, and that it had afforded
the city no opportunity whatever to remove
the ice and snow: in other words, that the removal thereof
was a practical impossibility, and that the city was guilty
of no negligence.  If it had devolved upon us to determine
the question of fact, we should be impressed with the force
of appellant's argument.  But question of fact, neverthe-
less, it was, and the verdict of the jury must be deemed to
control.  It will serve no useful purpose that we deal with
the details of the evidence.  Discussion can add nothing to
that already had in our many cases upon that subject.  We
hold that this assignment is not well taken.

II.  The second error assigned is predicated upon two
grounds:  (1) That the evidence sought to be elicited from
the doctor was not, in its nature, privileged, within the
meaning of the statute;  (2) that the privi-
lege, if any, had been waived by the fact
that the plaintiff's wife, as a witness in his
behalf, had testified voluntarily to the same
subject-matter.

As to the first ground, it was proposed to show by the
doctor that, when he called to attend the patient, within a
brief time after he had been brought home, he observed that
he was in an intoxicated condition.  Was this observation
of fact on the part of the doctor privileged, within the
meaning of the statute?  We think it was.  The observa-
tion and its opportunity came to him strictly in the line
of his professional duty to his patient.  Knowledge of his
condition was essential to appropriate treatment;  and,
though it be said that the doctor was primarily interested
in the patient's injuries, yet his physical condition in other

1. MUNICIPAL CORPORATIONS: streets and alleys: negligence: sidewalks: sufficiency of evidence.

2. WITNESSES: competency: privileged communications: physician.

respects might become very important in determining the treatment to be adopted. The fact thus observed by the doctor was of a confidential nature. The patient might well say that he would not have submitted himself to the observation of the doctor in that regard, except in reliance upon the statutory privilege. That the information thus obtained was privileged is the clear trend of our previous cases on the subject. *Prader v. National Mas. Acc. Assn.*, 95 Iowa 149, 159; *Doran v. Cedar Rapids & M. C. R. Co.*, 117 Iowa 442, 450; *Finnegan v. City of Sioux City*, 112 Iowa 232; *Battis v. Chicago, R. I. & P. R. Co.*, 124 Iowa 623. In the latter case, we said:

"The privilege cannot be subject to measurement by metes and bounds, and we may well assume that all that was told to the physician, and all that was developed by his examination or came under his observation, was necessary and proper for his understanding of the condition of his patient. The relation of physician and patient being established, if, by any fair intendment, communications made have relation to the physical or mental condition of the patient, we are bound to hold them privileged."

III. Was the privilege waived? As such waiver, the appellant relies upon the following testimony in chief, given by the plaintiff's wife, as a witness in his behalf:

"When the doctor came, he and I kept right on with the treatment and snow. We kept it up for about an hour and a quarter after the doctor came, until his hands were limbered up. The doctor put some kind of salve on them and bandaged them. It was after ten when the doctor left the house that night. When the doctor came, both officers left."

3. WITNESSES: competency: privileged communications: waiver.

That the privilege may be waived by the voluntary introduction of testimony concerning the same subject-matter was settled by us in *Woods v. Incorporated Town of Lis-*

*bon,* 150 Iowa 433. As to the subject-matter, therefore, concerning which the wife testified, the privilege was waived. But no evidence concerning the subject-matter thus testified to by the wife was rejected by the court. She did not thus testify on the question whether her husband was in an intoxicated condition or not. Her testimony, there-

4. WITNESSES: competency: privileged communications waiver: cross-examination.

fore, did not lift the veil of privilege on that subject.

We do not overlook that, in its reply brief, the appellant set forth certain other testimony by the witness, consisting of cross-examination and redirect examination, and based thereon a claim of waiver of privilege. The material part of this testimony was as follows:

"Cross-examination.

"Q. Didn't you say to your husband, shortly after he was brought in, in substance, that you knew something like this would happen, the way he was drinking,—didn't you say that, in substance, to him? A. No. Q. You are positive of it, are you? A. Why, I am. Q. Said nothing like that? A. No. Q. If you made such a statement, your husband made no reply to it either, did he? A. No."

"Redirect Examination.

"He was not drunk when they brought him home. Q. Will you tell the jury, if you know, whether he had been drinking that evening? A. No, sir. Q. And upon what do you base that statement? A. Well, he called me up at noon, after the show, and I could tell whether he had been drinking or not by his voice. Q. After he was brought home that evening, were you with him all the evening? A. Yes, sir. Q. Was there any smell of liquor upon his breath? A. No, sir."

The claim of waiver of privilege was based in the court below, in terms, upon the "direct examination" of the witness, and upon nothing else.

In its opening brief here, and in its ground of reversal, the appellant put its claim of waiver of privilege, in express terms, on the "direct examination" of the witness. The opening argument set forth specifically that part of the direct examination of the witness which was relied on as a waiver of privilege. This is the evidence which we have set forth in the original opinion. In holding that this evidence did not amount to a waiver of privilege, we pass upon the only question of waiver presented to the trial court, and the only such question presented in appellant's opening brief.

It is not permissible to the appellant to shift its ground of waiver in its reply brief. If we overrule the grounds of the opening brief, we cannot sustain those of the reply, even though we believed that it disclosed a waiver. Moreover, to reverse on the ground set forth in the reply would be to reverse the trial court upon a question not presented to it. What the trial court held was that there was nothing in the direct examination of the witness that amounted to a waiver of privilege. We agree with that holding.

The judgment below must, therefore, be—*Affirmed.*

LADD, C. J., PRESTON and SALINGER, JJ., concur.