FRED ROEDER V. STATE OF NEBRASKA.

FILED NOVEMBER 14, 1929. No. 26939.

*James E. Addie*, for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *Clifford L. Rein, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, and EBERLY, JJ., and REDICK, District Judge.

GOOD, J.

Plaintiff in error (hereinafter referred to as defendant) was convicted on an information charging him with malicious destruction of personal property of the value of more than $35, and was sentenced to imprisonment in the penitentiary for a period of 18 months. He prosecutes error to review the record of his conviction.

Several of the assigned errors relate to the sufficiency of the evidence to sustain the verdict. From the record the following pertinent facts appear:

The defendant and one Albright each owned and operated threshing machines and were competitors in business. Defendant lived in the city of Hastings. On October 24, 1928, after completing a job of threshing, Albright's machine was moved to the premises of one Hollister and was set in a stubble field, preparatory to engaging in another job of threshing on the following day. After the machine was so placed, Albright cleaned the separator before leaving it for the evening. That night, shortly after 12 o'clock, the separator was discovered to be on fire. It was wholly consumed by the flames. There had been no electrical storm that day or evening, and it was apparent that someone must have set fire to the separator. An examination of the premises about the machine the following morning disclosed foot-prints leading to and from the scene of the fire. These tracks were traced and they came from and returned to a nearby corn-field into which an automobile had been driven and turned around. These foot-prints were carefully examined and disclosed certain peculiarities. The tracks made by the tires of the automobile were also examined, from which it was discovered that a different character of tire was upon each one of the wheels; one being a smooth tire; another with a patch upon it which made a

mark at each revolution of the wheel, and the others bearing peculiar marks showing a different kind of tire upon each of the wheels.

For some years previous defendant had done the threshing for Mr. Hollister and others in the neighborhood, and had solicited their threshing jobs for the season of 1928, but had been informed that the jobs had been given to Albright. Suspicion was directed to the defendant, and on the morning of August 25 a deputy sheriff went to defendant's home and found him working upon his threshing machine. The deputy informed him that he was suspected or accused of burning Albright's separator, and requested defendant to go with him to the courthouse, to submit to an examination by the county attorney. Defendant consented and went with the deputy sheriff to the county attorney's office. The county attorney being at the time engaged in his private room, defendant was seated in the outer office, where the deputy left him while he went into the sheriff's office. In a few moments it was discovered that the defendant had left the courthouse, without waiting to be questioned by the county attorney. Search was made for him and he was not found in his room or about the city of Hastings.

It appears that defendant left the city that day, about noon, and drove to the home of one Carl Brucker, some seven or eight miles in the country. He tried to induce Brucker to go with him to North Dakota, to there engage in threshing. Brucker's working engagements would not permit him to go at that time. That night Brucker and his mother drove into the city of Hastings. Defendant accompanied them in their car, stating to Brucker that he did not want to bring his own car into Hastings. While in Hastings that evening he obtained his clothing and returned with Brucker and his mother to their home. The next morning he told Brucker that he was going to North Dakota and gave him an address, with the request that Brucker write him and send any clippings, relative to the fire, which might appear in the newspapers. He also

told Brucker that the officers were after him but that they would not "get him" in Nebraska.

The premises of defendant were searched and under his bed were found a pair of shoes. These were taken and fitted into the tracks found in the corn-field and leading to and from the location of the burned separator. The shoes not only fitted the tracks made, but certain peculiarities of the heels and sides of the shoes were observed in the tracks, which were such as these particular shoes would make. Also, one witness, who had worked for the defendant, testified that he had seen him wear shoes of this particular type. A pair of defendant's shoes were placed in evidence, and, although evidently of a different type, the shoes are the same size as those found under his bed. Later the defendant was arrested in North Dakota, and he and his automobile were brought back to Hastings. The tires, taken from his car, were introduced in evidence. It appears that one of the tires has a smooth tread, another a large patch upon it, which corresponds to the mark of the car track found in the field. Each of the other tires is of a distinctive and different type, and the markings of these tires also correspond very closely to the several markings of the tire tracks in the field.

While returning from North Dakota defendant denied burning the separator, but told the deputy sheriff that he would like to have Mr. Albright come to the jail to see him, and indicated a willingness to pay him for the loss of his machine. It also appears that one witness, who had formerly worked for defendant, and who was seeking employment for the season of 1928, was told by defendant that Albright had secured a number of the threshing jobs which defendant formerly had, and that he believed Albright was cutting prices, and defendant stated that he would "get even" with him. There were other circumstances proved pointing toward defendant's guilt.

While the evidence of defendant's guilt is circumstantial, from a consideration of the entire record we are

constrained to hold that the jury, if they believed the state's witnesses, were warranted in the verdict which they returned. It is true that defendant and his brother testified that on the night in question defendant was at his home; that they slept in the same bed; and that defendant had nothing to do with the burning of the separator; and it is also true that a large number of reputable citizens testified to defendant's previous good character as a law-abiding citizen; but this presented merely a question for the jury. It was for them to determine whom they would believe.

Complaint is made of nearly all of the instructions given by the court, but only one or two are discussed in the briefs. After a careful examination of the entire charge, we find no misstatement of the law, or anything that was prejudicial to the rights of defendant.

We have carefully examined all of the requested instructions, and find that most of them are covered in those given by the court.

Particular complaint is made of the failure of the court to instruct the jury that lack of motive was a circumstance to be considered in defendant's favor, in determining his guilt or innocence. We think there was sufficient evidence to indicate that there was a motive, and the court was, therefore, justified in refusing to give an instruction of the character requested.

Complaint is made because the county attorney was permitted to ask leading questions of several of the witnesses. In a number of instances leading questions, suggesting the answers, were propounded and answered, but in nearly every instance no objection to the question was interposed. In one or two instances there was an objection lodged. The rule is that it is within the sound discretion of the trial court to determine whether leading questions shall be permitted, and error cannot be predicated upon the ruling of the court in permitting leading questions, unless there is an abuse of discretion. The answers to the questions, to which objection was interposed and over-

ruled, were not prejudicial to the defendant, and we do not find that there was any abuse of the court's discretion.

Serious complaint is made because the deputy sheriff was permitted, while on the witness-stand, to detail, on his redirect examination, a conversation had with one Dohman, in North Dakota, where defendant was arrested, and which conversation was not had in the presence of defendant. This testimony was quite damaging to the defendant. The record discloses that counsel for defendant first went into the conversation had with Dohman and brought out a part of it, and, upon redirect examination, the trial court permitted the whole of the conversation to be detailed.

Section 8849, Comp St. 1922, *inter alia,* provides: "When part of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other." Since the defendant, himself, first introduced evidence of a part of the conversation in question, the court properly ruled that the state was entitled to give the whole of the conversation on the same subject-matter.

The record discloses no error prejudicial to the rights of the defendant. The judgment is

AFFIRMED.