JULIA H. LEEDS, ADMINISTRATRIX, APPELLEE, V. PRUDENTIAL INSURANCE COMPANY OF AMERICA, APPELLANT.

FILED FEBRUARY 14, 1935. No. 29108.

Beghtol, Foe & Rankin, J. E. Ray and Ralph W. Hyatt, for appellant.

J. E. Willits, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ., and CHAPPELL, District Judge.

PAINE, J.

This is an action brought upon a life insurance policy, payable upon the death of Mabel Fernandez to her administrator or executor. A verdict was returned by ten jurors in the sum of $587.50, and in entering the judgment thereon the court awarded an attorney's fee of $200 as part of the costs. Defendant appeals.

Mabel Fernandez was employed at times in various restaurants, and had been carrying two life insurance policies, of the industrial type, issued by the Prudential Insurance Company of America, in the sum of $500 each, upon which she made weekly payments of premiums. In 1930 the limit allowed for industrial policies, which were written without medical examination, was raised to $1,500, and the agent for the defendant at Hastings went to see the deceased at her mother's home, after the two older policies had been transferred to the Hastings office for the collection of premiums, and solicited her to take out a third policy for another $500. This agent testified that he had written hundreds of industrial policies for the defendant company, and had been employed by it from 1926 until about two months before the time of the trial, at which time he was no longer in its employ. The application for a third policy was signed by her on June 3, 1930, and later the agent delivered the policy to her. The agent testified that he wrote down her answers on the application, exhibit 3, in the presence of her mother, Mrs. Julia H. Leeds, and also a Mr. James Whitticker, who roomed at the house. Mr. Whitticker testified that the agent asked Mabel Fernandez to sign the application at the bottom of the printed part; that there was nothing written on it at the time she signed it, but that he told her if she would sign her name to it, as she was leaving for Omaha, and send the money back to her mother, that he would fill the application in and send her the policy.

"Q. 499: Did he ask her any questions about health or sickness or anything of that kind? A. No." Mrs. Julia H. Leeds, the mother, testified that she was also present with her daughter Mabel and Mr. Whitticker when the agent came there, and that the application, exhibit 3, was blank when her daughter Mabel signed it; that the agent told her that she had two policies before and that he knew what was on there, and that he would fill it out himself. Mrs. Leeds testifies that there was nothing said about consumption, tuberculosis, or spitting of blood, or anything like that; that she never heard the agent ask her daughter any questions, and that her daughter signed a blank application, which the agent took away from the home in that form, and that the daughter left for Omaha the next day, but was in no hurry about going; that this conversation all took place in the front room of her home at 808½ West First street, Hastings, Nebraska; that Mabel was sitting in a rocking-chair at the library table when she signed it; that she never saw the agent sign the application at all.

It is admitted that the Prudential Insurance Company of America promptly paid $500 each on the two older policies which Mabel Fernandez had been carrying for some time, and that it refused to make payment upon the third and last policy of $500 in suit in the case at bar, and alleges in its answer that Mabel Fernandez was not in sound health on June 9, 1930, the date the policy was delivered, but was suffering from pulmonary tuberculosis, and for that reason the policy never took effect; that she represented to the company that she had never suffered from consumption or spitting of blood, and that her health was good, and that she had no physical defect, whereas they allege the truth was that she was then, and had been for several years, afflicted with pulmonary tuberculosis, and had been treated therefor; that her statements in her application were false and fraudulent, and deceived the defendant to its injury, and that the defendant company would not have issued the policy if it had not been de-

ceived by said false statements; that it did not learn of these facts until after the death of Mabel Fernandez, at which time it tendered to the plaintiff the premiums that had been paid upon the policy in the sum of $17.94, which tender was refused by the plaintiff, and which is now brought into court and tendered in complete satisfaction of its liability. Mabel Fernandez died April 23, 1931, near Keystone, Nebraska, and was at the time of her death a resident of Hastings, Nebraska. All weekly payments due were fully paid at the time of her death, and the policy was in full force and effect. Julia H. Leeds was duly appointed administratrix of her estate, and letters of administration were issued by the county court of Adams county. The assistant district superintendent came to the plaintiff following the death of Mabel Fernandez, and said he had come to make settlement for the amount due on the policy, and that it was necessary for him to have the policy and send it in to the head office to have such office send payment thereof, and the plaintiff gave him the policy of insurance, and he has not returned said policy, nor has the defendant paid the amount due thereon, and, although requested, said defendant has failed, refused, and neglected to return the policy to plaintiff.

In the "Attending Physician's Certificate of Death," being exhibit 4, Dr. Edward Bridges says that he made the first visit to the deceased on March 4, 1931, and that she died April 23, 1931, and gives tubercular laryngitis as the immediate cause of death.

In exhibit 2, being the death claim sent in to the defendant, we find that the first two policies of $500 each are shown to be both dated September 5, 1927. The third, or policy in dispute, is No. 82,472,858, dated June 9, 1930. In this exhibit 2 it shows that the deceased was divorced, and left no children.

Nell Kaufman, a checker and cashier in the Fontenelle restaurant, with whom the deceased roomed in Omaha in 1927, 1928, and a part of 1929, was called as a witness by the defendant, and testified by deposition taken in Omaha

November 1, 1933. She stated that, when the deceased was taken sick one night, she called Dr. W. H. Betz, who had been her own doctor, and later took her to his office, and was present during his examination, and heard all of his suggestions and directions to the deceased in regard to her care of her health. After the direct examination of Nell Kaufman, she was then examined on cross-examination by the attorney for the plaintiff. The defendant then offered in evidence the deposition of Dr. E. W. Fiske, taken in the city of Santa Fe July 24, 1933, to which the defendant objected on the ground that it was a privileged communication between physician and patient, and that the deceased had in no way waived her privilege before her death, and that the estate represented by the plaintiff insisted that the evidence of the doctor was all privileged, and should not be allowed to be divulged. The jury were excused and the matter argued at length to the court. It was insisted that the plaintiff had waived the privilege by reading to the jury the cross-examination of Nell Kaufman, who was present during all of the examination of deceased by Dr. Betz, and having thrown down the bars had waived the privilege as to any and all doctors who had treated the deceased, and that the defendant had the right to offer the deposition of Dr. Fiske in relation to her condition while in Santa Fe, New Mexico.

The case principally relied upon is the Nebraska case of *Sovereign Camp, W. O. W., v. Grandon,* 64 Neb. 39. In examining this case, we find that the suit was between the representative of a deceased policyholder and an insurance company, and that the physician who attended the deceased in his last illness was called by the defendant, but objections to his testifying generally as to the condition of the deceased or his ailment were sustained, but thereafter the attorney for the plaintiff examined the physician as to a written statement that he had given that the deceased was not seriously sick until just before his death, and on the cross-examination by the plaintiff the physician admitted making the statement, and the same was offered

and admitted in evidence as part of the cross-examination, constituted a waiver of privilege on the part of the plaintiff, and that on redirect examination the defendant company should have been allowed to examine the physician generally as to the condition of his patient, and for that reason a reversal was entered in this court. In the course of the decision it is stated that this prohibition cannot be used both as a shield and a sword, and if a party of his own volition places before the jury the evidence of the physician he cannot longer object on the ground of privilege.

Following this *Grandon* case in the Nebraska Reports, Judge Wilbur F. Bryant, the deputy reporter, added a very valuable note, beginning on page 49, discussing the common-law rules and the Codes of the various states, showing that in some states such a physician shall not be called as a witness, nor can he be examined, and in other states showing that the privilege covers not only communications made to the physician by the patient, but all facts which came to the physician from his professional connection with the patient. Nebraska has not gone as far as many states, and our court allows a physician to be called and to testify that he was the attending physician, and to give the dates of his call, as such facts are not under the privilege.

In *Friesen v. Reimer,* 124 Neb. 620, there was a full discussion of sections 20-1206 and 20-1207, Comp. St. 1929, and it was pointed out that this court had held in *Struble v. Village of DeWitt,* 89 Neb. 726, that when part of a confidential communication between physician and patient is put in evidence by one party, the other party may give the whole communication on the same subject, but in this case Elizabeth Friesen took the stand and testified in minute detail with reference to her physical condition after she had been injured in an automobile accident.

The case at bar does not present as simple a proposition for solution, and because some questions were asked on cross-examination of Nell Kaufman about the physical

condition of the deceased, we are asked to rule that this opened up the entire subject and was a complete waiver of privilege on the part of the plaintiff. In examining the cross-examination, it is clear that the examiner kept entirely within the bounds of a proper cross-examination; that he did not go outside the usual limits, as was done in the *Grandon* case, *supra,* and seek to introduce evidence on his own case, but, rather, his cross-examination may be properly considered as in limitation or modification of the answers made on direct examination by this witness. There is nothing that indicates that he was seeking independent evidence at the time of the taking of the cross-examination, and it appears that such a cross-examination cannot be considered as the evidence of the party who calls the witness unless they go too far afield in their examination.

Another question arises at this point: The roommate of the deceased, Nell Kaufman, was very anxious to take the deceased to her own doctor for examination, and being acquainted for several years with the doctor, she went into the private examination room with her roommate and listened to all that the doctor said. To now argue that taking a third party with her is in itself an entire waiver of privilege does not appeal to this court. It might, and often does, arise that a patient who cannot speak the English language takes with her a close friend who can interpret between the doctor and herself. It is quite often true that an old gentleman making a will takes with him into the private consultation room his son, who listens to all the conversation, or that the stenographer of the attorney is present. It does not seem that the mere fact of the presence of a third person is a waiver of the confidential relations between attorney and client, or physician and patient. Nor is the cross-examination of such third person, when called by the other side to answer such questions as may be unobjectionable, a waiver of the right of privilege, which should be jealously guarded to protect the rights of the one whose lips are closed by death.

Our legislature, in enacting sections 20-1206 and 20-1207, Comp. St. 1929, has followed an example prevailing in many other states, and which is in the interest of justice, and leads to a lack of embarrassment on the part of a patient or client in disclosing the most confidential facts to their physician or attorney, and this right of privilege should be cherished and protected by the courts, and not easily set aside.

Defendant charges that deceased wilfully and fraudulently concealed the fact that she was suffering with tuberculosis when she signed the application for the third policy. Two reputable witnesses, who were present in the room during the entire transaction, testified directly against the defendant's agent on this point. The weight of the testimony is that she made no representation about her health, and no answers had been filled in on the application when she signed it. A few days later the agent personally delivered the policy to the deceased, and question No. 114 was: "Did you talk to her after that day? A. Yes; I delivered the policy to her. Q. Was there anything unusual about her voice that you noticed? A. It wasn't to me. She talked rather husky, maybe, but that wasn't out of the ordinary to me because that's the only way I had known that she talked."

Then, in examining exhibit 2, the claim sent in to the insurance company, there is an impression of a rubber stamp across near the top, with the words, "Received by Div. Mgr.," and on the blank line following this, in ink, the signature, "J. Ray," and following this signature the words, "Agt. to be dismissed. 7/23."

It is our conclusion that the defendant has failed to prove by the weight of the evidence that any untrue answers were made by the insured.

Some of the authorities in support of statements herein are: *Roberts v. Hennessey*, 191 Ia. 86; *Burgess v. Sims Drug Co.*, 114 Ia. 275, 54 L. R. A. 364; *Burns v. City of Waterloo*, 187 Ia. 922; 10 R. C. L. 958, sec. 132; *Towle v. New York Life Ins. Co.*, 121 Neb. 175; *Lauer v. Banning*,

152 Ia. 99; *Coca Cola Bottling Works v. Simpson,* 158 Miss. 390, 72 A. L. R. 143.

We have examined all the reasons assigned for reversal, and finding no prejudicial error, the judgment of the district court is hereby

AFFIRMED.