THOMAS L. SPANI, APPELLEE, v. ALONOZO C. WHITNEY, APPELLANT.

110 N. W. 2d 103

Filed July 14, 1961. No. 35004.

*McGinley, Lane, Mueller & Shanahan,* for appellant.

*Charles Evans Hughes* and *Robert E. Roeder,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SIMMONS, C. J.

In this action plaintiff seeks to recover personal injury and property damage from the defendant. Plaintiff alleged some ten different acts of negligence of the defendant as the cause of his damage. Defendant by answer denied generally and alleged contributory negligence sufficient to bar recovery. Defendant by cross-petition alleged negligence in four particulars and sought a recovery for personal injury and property damage.

The cause was tried to a jury resulting in a verdict and judgment for the plaintiff. Defendant appeals. We affirm the judgment of the trial court.

There is ample evidence in the record from which the jury could readily determine the following facts:

U. S. Highway No. 6 going east from Imperial goes through a practically level country for several miles. It is a black-top, two-lane highway with the usual center marking dividing two lanes of travel. The point here involved, the "confusion" area, where the accident happened was visible 2 miles or more to the east and 2 miles or more to the west.

On the evening of August 11, 1958, about 8 p.m., a car caught fire about 4 miles east of Imperial and on the south side of the black-top, or on the black-top and the shoulder adjacent to it. An emergency unit and a firetruck went to the fire from Imperial. The emergency unit parked to the west of the burning vehicle. The firetruck, after stopping briefly at the side of the burning vehicle, was then moved to the east of the burning vehicle. Its hose was brought to the fire along the pavement.

The above three vehicles blocked a part of the traveled portion of the highway in what was the normal south or eastbound lane.

Other cars gathered behind the three principal vehicles, some in the borrow pit, and some on the north part of the highway or the westbound lane.

Some of the private cars had their lights on. The firetruck and emergency vehicle had their red lights and warning signals in operation.

Plaintiff coming from the west, driving his car, saw the "confusion" and lights for a considerable distance. He slowed down and then was signaled to go on east by one of the emergency unit personnel. He did so. There was congestion on his side of the highway and in effect the pavement at that place had been reduced to a one-lane road. He proceeded east slowly, driving in part in the north lane, and just about opposite the burning vehicle the lights of the defendant's car flashed on. Plaintiff stopped and tried to back up, but the collision occurred before he could do so.

The defendant had come from the east. By his own

testimony, he saw no lights or other indications of trouble on the highway until he was almost upon it. He justifies this by testimony that he was driving on his own side of the road at a speed of 45 miles per hour. When he saw the "confusion" he undertook to stop but was unable to do so. Both cars were largely on the normal north driving lane, but also slightly across the center line when they came to rest a short distance apart.

Defendant's first assignment of error goes to this situation. Three days after the accident plaintiff voluntarily wrote out a statement of his version of the accident and gave it to the sheriff. In longhand it covered one and one-third pages of legal size paper.

In direct examination plaintiff testified: "As we approached the confusion, why, of course, the closer we got to the point of confusion, we could see the emergency wagon of Imperial at the west end of the confusion with the red light flashing; seen a man with a flashing light, the flagman to the west, to this (indicating) side of the emergency wagon. * * * Yes, there were cars parked on both sides of the highway; also, people milling about."

On cross-examination defendant had the statement marked as exhibit 7, and asked plaintiff if he made this statement in the writing: " 'Upon arriving at congested area of which both sides of road were lined with cars and also noticed emergency wagon at west end and fire truck at east end of what turned out to be a burning car.' " Plaintiff said that he did.

Defendant then read him a part of a sentence in the statement and asked plaintiff if he made it. He said he did. The partial sentence was: " 'As I arrived at this point (almost directly beside the car) a car coming from the east appeared.' "

Defendant then asked if the plaintiff gave the sheriff no estimate of defendant's speed when he wrote up the statement. The plaintiff answered: "No estimate of miles. I estimated he was traveling at the highway

speed." This answer is, in effect, in the exhibit 7 writing.

Plaintiff offered the entire statement in evidence. Defendant objected and among other reasons stated: "* * * it is no item of contradiction." With this statement the trial court was given no information as to why the statement was read, unless for hoped-for impeachment purposes. The exhibit was admitted.

Defendant argues here that the written statement was only admissible on the basis of being an impeachment statement and that the statement did not impeach. He claims that hearsay self-serving statements and conclusions were admitted.

Defendant, however, invited the introduction of the exhibit.

Section 25-1215, R. R. S. 1943, provides: "When part of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other. When a letter is read, all other letters on the same subject between the same parties may be given. When a detached act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood, or to explain the same, may also be given in evidence."

The concluding sentence gives the reason for the rule. It requires no exposition on our part.

The rule is stated in 31 C. J. S., Evidence, § 375, p. 1159, as follows: "Where one party brings out part of a transaction, conversation, statement, writing, or course of conduct as an admission against interest, the other party may thereafter bring out the whole of it to offer his own explanation thereof and rebut its discrediting and damaging effect, even though proof otherwise incompetent is used." See, also, 20 Am. Jur., Evidence, § 551, p. 463.

It has been suggested that the questions asked were directed to the matter of a possible impeachment, and

no impeachment having occurred, the balance of the statement was not admissible and its admission erroneous. This argument would restrict the application of section 25-1215, R. R. S. 1943, to impeachment matters only.

A cursory examination of our decisions shows that we have not so limited it.

We have not undertaken to define the broad outline of the meaning of the clause "the same subject." It has, however, been applied in a number of different situations. "All the conversation on 'the same subject,' that is, the fact of whether there was a contract or not, was what plaintiff was entitled to call for; not all the conversation as to plaintiff's claim." Pettis v. Green River Asphalt Co., 71 Neb. 513, 99 N. W. 235.

In Struble v. Village of DeWitt, 89 Neb. 726, 132 N. W. 124, it was held to permit the admission of the whole of a confidential communication between patient and physician.

In Roeder v. State, 119 Neb. 116, 227 N. W. 446, the statute was held as authorizing the admission of a conversation between a sheriff and a third party. We held: "Since the defendant, himself, first introduced evidence of a part of the conversation in question, the court properly ruled that the state was entitled to give the whole of the conversation on the same subject-matter."

In Lindley v. Wabash Ry. Co., on rehearing, 120 Neb. 204, 233 N. W. 450, the defendant brought out the matter of repairs to a platform alleged to have been dangerous. Defendant contended that subsequent repairs were not admissible as evidence of negligence. We held: "When defendant went into the question of removal of the planks, we think it opened up the subject of repairs. * * * Defendant brought out a part of the transaction, and plaintiff was entitled to have the whole transaction disclosed to the jury."

In Jensen v. Romigh, 133 Neb. 71, 274 N. W. 199, letters touching upon a transaction were admitted in

evidence. Plaintiff offered to prove the contents of other letters. We held: "Plaintiff should have been permitted to prove the contents of these letters. They throw light on the transaction, would have made the letters written by defendants more understandable, and they are part of the correspondence, part of which had already been admitted."

In Snyder v. Lincoln, 153 Neb. 611, 45 N. W. 2d 749, we were presented with the question of prejudicial error in the admission of certain exhibits. Plaintiff put part of the exhibits in evidence. Defendant offered the complete exhibits and they were received. With direct reference to the statute we held that the exhibits were properly received.

We are here dealing with a subject of the admission of evidence. Heretofore we have considered it in an area reserved to the judicial discretion of the trial court. To constitute error prejudicial or otherwise, an abuse of discretion must appear.

In Struble v. Village of DeWitt, *supra*, we said: "A considerable latitude must be allowed a trial court in such matters, and we do not think that this was such an abuse of discretion as to require a reversal." We also said: "* * * The trial court must determine whether the evidence offered is on the same subject, and its ruling will not be regarded as erroneous unless there is a clear abuse of discretion." We followed this decision in Friesen v. Reimer, 124 Neb. 620, 247 N. W. 561.

Struble v. Village of DeWitt, *supra*, was likewise cited with approval in Leeds v. Prudential Ins. Co., 128 Neb. 395, 258 N. W. 672, 96 A. L. R. 1414.

We need go no further here than to hold that abuse of discretion of the trial court does not appear.

The first assignment of error is not sustained.

Defendant's next assignment of error goes to the admission of the evidence of the sheriff as to the condition of the accident site. The sheriff arrived there some 17 minutes after the accident. He described the location

of the burning car, the emergency unit, the firetruck, and the flashing lights of those units. He was then asked if he observed other cars parked there and their location. Over objection he was permitted to answer that cars were parked to the east and west on both sides of the road. He then proceeded to describe the location of the two cars involved in the accident, the absence of skid marks, the presence of debris on the pavement and its location, and other conditions. He made it quite patent that he was testifying as to conditions at the time and after his arrival. There is no material conflict as to what he described as existing after his arrival and what other witnesses had described as existing before his arrival except possibly there were more noninvolved cars parked along the highway on either side.

Defendant relies upon Ficke v. Gibson, 153 Neb. 478, 45 N. W. 2d 436. In that case the trial court admitted evidence of foot and tire marks observed at the scene of an accident some 15 or 16 hours after the accident and without a showing that conditions had not changed since the accident. The defendant contends that we held it to be error. He overlooks the fact that we did not hold the error to be prejudicial.

Defendant overlooks the holding in Styskal v. Brickey, 158 Neb. 208, 62 N. W. 2d 854, where we held that: "If sufficient foundation is laid to show that the conditions they observed are the same as existed immediately following the accident, the officers should be permitted to testify in regard to what they observed insofar as it is relevant and material to the issues here involved."

The evidence here falls within the area of trial court discretion. To establish a rule that would exclude such evidence as a matter of law could readily result in a denial of any evidence of what a witness arriving at a scene of an accident might have observed. We see no prejudicial error in the ruling here challenged.

Defendant next argues as error the refusal of the trial

court to give a requested instruction based on section 39-7,110(a), R. R. S. 1943, which is as follows: "No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction."

The pavement here was 20 feet in width with a marked line down the center. It is undisputed in this case that the south or eastbound normal lane of traffic was at the time of the accident obstructed from 6 to 8 feet along the south side by vehicles, firefighting equipment, and men connected with their operation. This left a lane of from 12 to 14 feet for travel, assuming that there were no cars parked on the north side. There is evidence that there were cars so parked. Plaintiff was given a signal to proceed by a person directing traffic. At that time it is undisputed that the narrowed lane of traffic was clear for passage.

It is defendant's theory that the phrase "center of the roadway" and "right-hand side of the roadway" used in the statute refers to the center of the roadway and right-hand side of the highway as constructed and marked. He further seems to contend that he had the right to proceed westward regardless of eastbound traffic so long as he was using the right of the marked center of the highway. We had occasion to construe the phrase "right half of the highway," as used in other provisions of the statute, in Krepcik v. Interstate Transit Lines, 154 Neb. 671, 48 N. W. 2d 839. We held that it meant the right half of the traveled portion of the high-

way that was available for traffic at the time. See, also, Egenberger v. National Alfalfa Dehydrating & Milling Co., 164 Neb. 704, 83 N. W. 2d 523. Consistent with that holding we hold here that the phrases used in section 39-7,110, R. R. S. 1943, relate to the center of and right-hand and left-hand sides of the main-traveled portion of the highway available to traffic at the time. The trial court did not err in refusing to give the requested instruction.

Defendant's final argument is that the trial court erred in instructing the jury that it could include in its verdict plaintiff's loss of earnings from the date of injury to the date of trial if it found that he had lost any such earnings. Defendant claims that the evidence was insufficient to sustain an award of any amount for the loss of earnings.

The record discloses that during the progress of the trial the defendant tendered to the court a number of instructions. One request was for an instruction as to the allowance of the present worth of future loss of earnings. A second request was for an instruction as to the requisite proof of future loss of earnings. A third request related to the loss of earnings which the jury may find "have been sustained."

At the close of the trial, without withdrawing his request for instructions referred to above, the defendant moved the court to take from the jury any question of loss of earnings on the ground that there was no evidence, particularly of past earnings.

The trial court advised the defendant that he was not going to submit the issue of loss of future earnings to the jury but was going to "submit the matter of any earnings lost up to the present time." The court then called attention to the evidence of lost earnings. The defendant agreed that there was evidence to sustain that issue.

The rule is that a party cannot complain of the giving of an instruction in harmony with one which he re-

quested. American Fire Ins. Co. v. Landfare, 56 Neb. 482, 76 N. W. 1068. In harmony with that rule it follows that one who at the close of a trial admits that there is evidence to establish an issuable fact in accord with a requested instruction cannot afterward be heard to say that there was no evidence received tending to prove that fact.

The judgment of the trial court is affirmed.

AFFIRMED.