CITY OF SOUTH OMAHA V. VINCENT WRZESINSKI.

FILED DECEMBER 17, 1902.    No. 12,399.

Commissioner's opinion, Department No. 2.

1. Instruction: CORRECT STATEMENT OF LAW: ASSUMPTION OF MATERIAL FACT: NO EVIDENCE: UNDUE EMPHASIS. An instruction which, in addition to a correct statement of the law, contains an assumption of the existence of a material fact upon which there was no evidence offered or received, and directs the attention of the jury to, and unduly emphasizes a part of, the evidence, should be refused.

* 30 Am. Rep., 827.

† 68 Am. St. Rep., 589.

City of South Omaha v. Wrzesinski.

2. **Instruction:** SUBMISSION OF ISSUE NOT RAISED BY PLEADINGS OR SUPPORTED BY THE EVIDENCE. An instruction which submits an issue to the jury not raised by the pleadings or supported by the evidence, is erroneous and was properly refused.

3. **Loss of Claim:** SECONDARY EVIDENCE AS TO FILING. Where it appears that it was the custom of a city clerk to make no record of claims presented to him for damages against the city, but simply to file them and place them in a receptacle kept for that purpose, to await the action of the council, that an original claim so filed was lost and could not be produced, secondary evidence may be received to establish the facts relating to the filing thereof.

4. ———: ———: RECORD OF PROCEEDINGS OF CITY COUNCIL. In such a case, the recorded proceedings of the city council, reciting that such claim was before that body for consideration about the time it was alleged to have been filed, may be read in evidence for the purpose of showing that a claim was in fact filed.

5. ———: ———: MAILING OF CLAIM: ITS LOSS: CARBON COPY. Where the evidence discloses that the plaintiff's attorney had mailed a claim to the city clerk, that it was lost, that he had kept a carbon copy of it which he produced and properly identified, —the court did not err in allowing such copy to be read to the jury to prove that the claim, in form and substance, complied with the requirements of the law.

6. ———: ———: LETTER OF CLERK AS EVIDENCE. Where the person who was the city clerk at the time the claim was mailed to him was no longer in office, and is beyond the jurisdiction of the court, a letter written by him to plaintiff's attorney at or near the time he received the claim, in which he certifies under his hand and the seal of his office that he had received and filed it on a date named therein,—his signature thereto being duly and properly identified,—was properly received in evidence to establish the date on which the claim was in fact filed.

7. **Evidence.** Evidence examined, and *held* that the verdict was not excessive, and was sustained by the evidence.

ERROR from the district court for Douglas county. In the nature of action on the case, against a municipal corporation for personal injuries. Tried below before KEYSOR, J. Verdict for plaintiff in the sum of $1,500. Judgment on verdict. Defendant brings error. *Affirmed.*

*Lambert,* for plaintiff in error.

*James H. Van Dusen, contra.*

BARNES, C.

Vincent Wrzesinski brought this action in the district court for Douglas county against the city of South Omaha, to recover damages for a personal injury alleged to have been sustained by him while passing over what was known as the L street viaduct in said city. He alleged in his petition that on the night of the 27th of September, 1899, between the hours of 11 and 12 o'clock P. M., while he was walking over said viaduct, he stepped into a hole in the board walk thereof and his leg passed through the same; that he was thrown forward and sustained severe and permanent injuries, from which he suffered great pain, and which disabled him for a long time from following his usual employment; that the hole which caused his injury had remained in said walk for a long time prior to the accident, and that the city had due notice thereof; that it had been there a sufficient length of time for the city, in the exercise of ordinary care, to have ascertained its existence and to have repaired the same before the accident occurred; that as a result of the injury so sustained he had been damaged in the sum of $5,000, for which he prayed judgment. The city, by its answer, denied the facts stated in the petition, and alleged contributory negligence as a defense to plaintiff's cause of action. Plaintiff's reply was a denial thereof. Upon these issues the cause was tried to a jury and resulted in a verdict against the city for $1,500. A motion for a new trial was presented to the district court, was overruled, and judgment was entered for the amount of the verdict. The city thereupon prosecuted error to this court.

1. Counsel for the plaintiff in error contends, first, that the court erred in refusing to give the jury instruction No. 2 of his requests, which is as follows:

"In order to charge the defendant with negligence it must appear from the evidence not only that the sidewalk was defective at the time of the alleged injury, but it must further appear that such defect was actually known to the city or some of its officers, whose duty it was to repair such defects, or report them to defendant; or that the defect had existed for such a length of time prior to the alleged injury, that the city, if exercising ordinary diligence, would or should have known of the defect. And in determining whether or not the defendant exercised reasonable diligence and care in its efforts to discover and repair defects in said sidewalk, you are to consider any tests, inspections and examinations of said sidewalk, the thoroughness, sufficiency or insufficiency of the same, with all other facts and circumstances in evidence in relation thereto."

The first part of this instruction is a correct statement of the law. The closing portion of it, however, is erroneous. It directs attention to and emphasizes unduly a part of the evidence in the case, and for that reason it was properly refused. *Rising v. Nash,* 48 Nebr., 597; *First Nat. Bank of Denver v. Lowrey,* 36 Nebr., 290; *Marion v. State,*\* 20 Nebr., 233, 244; *City of Lincoln v. Beckman,* 23 Nebr., 677, 682. It also contains an assumption that there had been a test of the sidewalk in question, as well as an inspection. An examination of the bill of exceptions discloses that it contains no evidence which shows that any test thereof was ever made. An instruction which assumes that there is evidence to establish a fact when no such evidence was offered or received, is erroneous. For this reason also the instruction was properly refused. *Turner v. O'Brien,* 11 Nebr., 108; *Esterly v. Van Slyke,* 21 Nebr., 611, 615; *Chicago, B. & Q. R. Co. v. Schalkopf,* 54 Nebr., 448; *City of Crete v. Childs,* 11 Nebr., 252. In the case of *Dunbier v. Day,* 12 Nebr., 596, 603, an instruction like the one in question, and closing with almost the identical words, was held by Chief Justice LAKE to be erroneous.

\* 57 Am. Rep., 825.

In fact, the general rule governing this question may be stated as follows: "To entitle a party to an instruction asked, it must be correct as an entirety. If not correct in all its parts, both as to law and facts, it may properly be refused." 11 Ency. Pl. & Pr., 234; *Wells v. State*, 47 Nebr., 74.

2. It is next contended by the city that the court erred in refusing to give the jury instruction No. 4 of its requests, which is as follows:

"You are instructed that if you find that said sidewalk was defective at the point complained of, yet if you further find that said defect was a latent one, that is, a defect not apparent or suggested by appearance or which was not, or would not, become apparent by a test in the nature of the ordinary use and care of the sidewalk, then defendant would not be liable for injury resulting to plaintiff therefrom, unless it had actual knowledge of the defective condition of said sidewalk or of appearances suggestive of defective or dangerous conditions, or negligently and carelessly constructed that portion of said sidewalk, with defective and decayed material."

A careful examination of the pleadings in this case discloses that no issue of a latent defect in the sidewalk in question was tendered or tried. The plaintiff in the court below alleged in his petition that he stepped into a hole in the sidewalk; that the hole in question had remained there so long that the city had notice of it, or by the exercise of ordinary care, would have ascertained its existence. This was denied by the city in its answer. The plaintiff testified that while walking across the viaduct on the night in question he stepped into the hole described in his petition and fell forward upon the walk, and that his leg became wedged in the hole so tightly that he could not extract it; that he was accompanied by three persons,— Frank Alex, Henry Alex and Barbara Zerzewski. Each of these witnesses testified that they were with the plaintiff when the accident occurred. They also testified as to the existence of the hole in the sidewalk; that the plaintiff

stepped into the same in the darkness; that he fell forward upon the planking of the viaduct; that his leg was wedged in the hole so tightly that it could not be removed. And Henry Alex testified that he tried to cut the hole larger with his pocket-knife so that plaintiff could withdraw his leg therefrom, and that he was unable to do this; that he ran back to the end of the viaduct and called John Fida out of his saloon and told him what had happened; that Fida got a chisel and hammer and went with him to where plaintiff was fast in the hole in the sidewalk; and that they thereupon enlarged the hole with the use of the chisel and hammer and thus succeeded in releasing the plaintiff from his perilous situation. Fida corroborates this statement completely, and testified that he had seen the hole in question, in the sidewalk of the viaduct, and knew that it had been there for at least two weeks before the accident occurred. The city in opposition to this evidence introduced two witnesses,—Thomas Erwin and John Ross. Erwin testified that he walked over the viaduct three times a week to examine it, and if he found any holes he nailed boards over them; that there were many holes in the viaduct from time to time, and that it was in a dangerous condition; but that he did not see the hole in question. Ross testified that the witness Erwin was acting under his directions, and that after they heard of the accident they both went to the viaduct and examined it, and that there was no hole there. It thus appears that the question of latent defects was not in issue by the pleadings, and there was not a syllable of evidence from which the jury could infer any such defect. The instruction tendered did not conform to the issues and was not supported by any evidence, and for that reason it was properly refused. *Omaha Nat. Bank v. Thompson,* 39 Nebr., 269; *Hurlbut v. Hall,* 39 Nebr., 889; *Uhl v. Robison,* 8 Nebr., 272; *City of Friend v. Ingersoll,* 39 Nebr., 717, 728.

We might remark, in passing, that it appears from the record in this case that the instructions given by the trial court on his own motion were full and complete. No ob-

jection is made to any of them, and we hold that there was no error in this case in giving or refusing instructions.

3. It is further contended by the city that the court erred in permitting the city clerk to read from the record of the proceedings of the city council the action of that body upon the claim filed in the office of the city clerk by the plaintiff in the court below. It was alleged in the petition that the plaintiff served upon the defendant and filed in the office of the city clerk, his statement, in writing, giving the time, place and circumstance of his injury and the nature of the same, as required by the charter of the city, within twenty days after his injury occurred. This allegation was denied by the answer. It was incumbent upon the plaintiff to prove that fact, and the court instructed the jury that if he had failed to establish that fact, they should find for the defendant. It appeared from the evidence that the original claim, alleged by plaintiff to have been filed in the office of the city clerk of the defendant city, was lost and could not be found. It was also further shown that at the time the claim was alleged to have been filed, no record of such claims was made by the clerk; that he simply marked them "Filed" on the back thereof and placed them in a pigeonhole or package, kept for that purpose; that at the next meeting of the board after they were filed, he would lay them before the city council for its action. Under this method of procedure, the original claim, with the filing marks upon the back thereof, would be the best evidence of the fact sought to be established. The loss of the claim having been shown, and a proper and sufficient foundation having been laid for the introduction of secondary evidence, the court permitted the record of the action of the council upon the claim in question to be read, as follows: "Damage claim of Vincent Wrzesinski, read and referred to finance and attorney; claim for $5,000 for injuries to leg by falling through a hole in the L St. viaduct, on September 27, 1899."

This record was under date of October 22, 1899. This was one of the steps taken by the plaintiff to prove the

fact of the service and filing of the claim as required by law. While this does not establish the fact itself, it is a circumstance tending to establish it, because it shows by the recorded proceedings of the city council that the identical claim in question was before that body at a date shortly subsequent to the time when it is alleged that it was filed with the city clerk. This evidence was certainly competent for the purpose for which it was offered, and there was no error in its admission. Counsel for the plaintiff then produced a carbon copy of the original claim, identified it as such, and testified that it was a carbon copy of the original claim of the plaintiff, mailed by himself to the city clerk. The loss of the original, without the fault of the plaintiff or his counsel, having been fully established and the copy properly identified, it was then offered in evidence in place of the original, to show that the notice and claim was in due form of law, which was another step to establish the fact in issue. This was objected to for the reason that it was incompetent, and that it was not shown that the original notice, of which this purports to be a copy, was ever filed with the city of South Omaha, or with the clerk of South Omaha within twenty days after the alleged date of the injury. This objection was overruled, and the copy, Exhibit 1, was read to the jury. It was in due form; there was no error in its admission, and it established the fact that the notice and claim was in the form prescribed by the city charter and had been mailed to the city clerk for filing. In order to establish the date of filing, the plaintiff's counsel produced a letter written by the former city clerk, under his hand and the seal of his office, to the plaintiff's counsel, by which he receipted to them for the identical claim in question and certified that he had filed the same on the 16th day of October, 1899, which was within the time provided by law. The term of office of the clerk who wrote the letter having expired, and it appearing that he was out of the jurisdiction of the court, proper proof was made to the genuineness of the letter, and of his handwriting; and thereupon the letter was offered in evidence,

and was objected to by counsel for the city as hearsay and incompetent. It is now contended that the letter was an admission made by the clerk, and that he could not make an admission which would bind his principal. It is insisted that it was no part of the duty of the clerk to write the letter in question, and therefore it was not an official act of his, and should not be received to bind the city. The letter itself does not come strictly within the rule of admissions. It was not offered for that purpose. The only purpose for which it was offered was to show the substantive fact alleged by the plaintiff,—that he filed his notice and claim with the city clerk within the twenty days provided by law. While it may not have been, strictly speaking, the duty of the clerk to answer the letter which contained the claim against the city, nevertheless it was the custom to do so. It was his duty to file the claim when he received it, and while it may not have been his duty to notify the person from whom he received it that it was filed, yet his having done so over his hand, and attested the fact by the seal of his office, it can scarcely be contended that it would be at all necessary for the claimant to take any further steps looking to the filing of his claim. He might safely rely upon the fact that it was filed, and if any question should arise about it, the letter itself would be admissible in evidence to establish the date of such filing.

A very similar question was before the court in *Blackmore v. Boardman*, 28 Mo., 420. The court in that case had under consideration the question of the admissibility of the declarations of a secretary of the board of directors of the St. Louis public schools in relation to the giving of a notice required for the renewal of a lease. We quote from the body of the opinion as follows (p. 426) : "The parties agree that the application for renewal was in proper form, and as the minutes of the board of directors show that the notice was before the board on the 11th of August, at the second meeting held after it had been left by Kurlbaum, we think his evidence was properly received.

Notice left with a man about the office who had no authority to receive it of course would not bind the public schools, but, as the directors are not supposed to be all the time in session, it would seem that the secretary was the proper person with whom such applications should be left. It would be gross neglect in the defendant if he had left the notice with a chance man about the office, and had not returned again to inquire whether it had been received; but the agent was told by the secretary a few days afterwards, and in ample time to have given another notice, that it had been received, and under such circumstances it would be a fraud on him to hold that he had lost his rights by his negligence." It was held that the evidence was admissible. It was the duty of the city clerk to receive and file this claim, and his letter acknowledging the receipt thereof was a part of the very transaction in which he was engaged, and was clearly admissible in evidence. It was the statement of a public officer, made with reference to an act which it was his duty to perform, at or about the time of the performance thereof, and was made to the plaintiff's attorneys to assure them that the claim had been received by him and properly filed. We hold that the court did not err in admitting this letter in evidence.

4. Lastly it is contended by the city that the verdict in this case is excessive. We can not agree with this contention. The evidence discloses that the plaintiff below stepped into a hole on the L street viaduct, at or about 11 o'clock on the night of the 27th of September, 1899; that his leg went into the hole with such force that it became wedged and jammed therein, and that it was necessary to procure help and to use a chisel and hammer to enlarge the hole before he could be released; that the immediate effect thereof was to strip the skin and flesh from his leg on each side of it and lay bare the bone; that the wrench given to his knee was so severe that it caused a seepage of the synovial fluid from the knee-joint into the surrounding tissues, thus causing great swelling and

intense pain therein; that after having his leg bandaged, it required the aid of two persons to enable him to reach his home, which was a distance of eight or ten blocks; that they consumed at least forty minutes upon the way; that the following day he was visited by a competent physician and surgeon, who found the condition above described, and who attended to his injuries frequently for seven or eight weeks, and under whose care the plaintiff still was at the time of the trial; that an eminent physician and surgeon practicing in the city of Omaha was called in consultation, and his description of the wounds and injuries corresponded with the above statement. Both surgeons testified that the injury to the defendant's leg was such that it required great care and skill to prevent his having anchylosis of the knee-joint; that he had, at the time of the trial, partial but not full action thereof; and that in their opinion his injuries were permanent. It was shown that the services of the physicians in caring for the injury were worth $150; that while the plaintiff was at work at the time of the trial, yet he was unable to stand upon his feet for any great length of time without causing him considerable pain and suffering; that his work was such that he could work upon his feet, tagging beef carcasses, two or three hours, and the remainder of the day could sit down and prepare the tags ready for use upon the following day. Thus he was able to hold his position and earn as good wages as he was earning at the time his injury occurred. Opposed to this evidence was the statement of Dr. Ensor, who was mayor of South Omaha at the time the injury occurred, and who testified that some time during the month of October the plaintiff came to his office and wanted to settle the claim for $25; that plaintiff told him that he had a talk with two members of the council and they were willing to give him $25; and that he ought to have that much. Witness said that he watched the plaintiff as he went away from his office and that he walked all right, without much limping. This testimony was corroborated by a Miss Furgeson, who was a stenog-

City of South Omaha v. Wrzesinski.

rapher in the mayor's office. Dr. Ensor and Miss Furge-son must certainly have been mistaken about this matter. The person who visited the office must have been someone other than the plaintiff, because the testimony is over-whelming that at and during the time mentioned by these witnesses, the plaintiff was confined to his bed; that he did not leave the house where he was being cared for until the fore part of the month of November, when he was taken in a carriage to register so he might cast his vote, and to the place where he was employed to arrange about his resuming his work. The lady at whose house he boarded testified that he was confined to his bed for at least six weeks; and Wrzesinski testified that he was never at Dr. Ensor's office in his life, and never saw the doctor until he saw him at the trial. In any event, this whole matter went to the jury under proper instructions; the evidence was fully sufficient to sustain the verdict, and would have authorized the recovery of an amount much greater than the judgment herein.

Upon a careful examination of the whole record, we are satisfied that this cause was fairly tried, was sub-mitted to the jury under proper instructions, and that the verdict is fully sustained by the evidence, and we recom-mend that the judgment of the district court be affirmed.

OLDHAM and POUND, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.

POUND, C., concurring.

The only important question in this case, is the admissi-bility of the letter written by the city clerk. I concur in the opinion that this letter was admissible, but think it important to state the principle on which such a holding must proceed. Memoranda of acts, made by a person who is dead or beyond the jurisdiction of the court, whose duty it was, in the course of his office or business, to do the acts

57

and make the memoranda, are undoubtedly admissible to prove that the acts were done. *Patteshall v. Turford,* 3 Barn. & Adol. [Eng.], 890; *Welsh v. Barrett,* 15 Mass., 380; *Bank of United States v. Davis,* 4 Cranch [U. S. C. C.], 533, Fed. Cas. No. 915. To bring a case within this rule, it must have been the duty of the person who made the memorandum to do the acts in question. But it would seem that there need be no absolute duty to make the memorandum thereof. If the memorandum was proper in the prudent execution of his office or employment and was clearly made in the course thereof, and not merely as a loose note, I think it comes within the principle. *Elsworth v. Muldoon,* 15 Abb. Pr., n. s. [N. Y.], 440; *Fisher v. Mayor,* 67 N. Y., 73. In *Elsworth v. Muldoon,* an attorney noted the fact that he had redeemed land and taken the receipt for the debtor upon a receipt of the sheriff who had sold the land. After his death this was held competent evidence. In *Fisher v. Mayor* the city attorney had made a note on his register showing that a report had been confirmed. The confirmation had not been entered on the records of the city. The memorandum was held admissible to prove the fact of confirmation after the death of the attorney. In neither of these cases was it absolutely the duty of the attorney to make the memorandum. But it was a proper and a prudent thing to do in the course of the business in which they were engaged, and it related to acts it was their duty to do. So here, it was not absolutely the duty of the city clerk to acknowledge receipt of the claim and notify the claimant that he had filed it. But it was entirely proper for him to do so, as a part of the orderly exercise of his office; and the act, namely, receiving and filing the claim, was enjoined upon him by law. In *Estate of Fitzgerald v. First Nat. Bank of Chariton,* 64 Nebr., 260, I suggested that a letter, under circumstances giving it such character, was as much a memorandum as any other form of writing. The letter in question may be held a memoran-

dum made by the city clerk in the course of his duty, as to an act which it was his duty to do, and, as such, admissible after his removal from the state.