JOHNNIE BELL, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

67 N. W. 2d 762

Filed December 28, 1954. No. 33522.

*Grenville P. North,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Homer L. Kyle,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The defendant, Johnnie Bell, was charged in an information with the crime of assault with intent to kill, wound, or maim. He was found guilty of the lesser offense included in the information, assault with intent to inflict great bodily injury. The defendant filed a motion for new trial which was overruled. The trial court sentenced the defendant to a term of 4 years at hard labor in the Nebraska State Penitentiary. The defendant appealed.

The record discloses that Jessie Powell, the prosecuting witness, left his home at about noon on May 25, 1952, and proceeded to the home of Percy Holmes where he purchased his breakfast. While he was there a disturbance occurred between a man and a woman. The man pulled a gun out of his pocket. Powell got up from the table, knocked the gun from the man's hand, picked it up and put it in his pocket, and left with a lady friend who was there. Later Powell arrived at the Brown Bomber, also known as the Elite Club, a gambling place. He checked the gun at the door and went into the gambling room where he placed a bet with the defendant Johnnie Bell. An argument ensued with reference to the bet between Powell and the defendant. Powell also complained to the houseman. The defendant picked up the money and walked out of the Elite Club. Powell retrieved the gun, put it in his pocket, and went next door to the Apex Bar where he met the defendant and asked the defendant to give him his money back.

He put his hand in the defendant's face and said to him: "Anytime you put my money out I am going to take it." The defendant told Powell, "Don't you be here when I get back, I'm going home." Powell then left the Apex Bar and asked a man he knew to take him home, saying that he had a gun in his pocket and wanted to go home. This fellow refused. Powell then turned and walked north on Twenty-fourth Street where he was accosted by a fellow who asked him if he did not pick up a gun at the place where the argument occurred, the Percy Holmes residence. Powell replied that he did, and the fellow said: "Well, give it to me." Powell gave him the gun, then turned south, and was proceeding south when he saw the defendant on the running board of a car aiming a single-barreled shotgun at him. Powell testified that the defendant said a few words that he could not make out. The defendant then said: "I am going to kill you," and shot at Powell. The first shot hit Powell in the head and face and he staggered and fell behind a car. He made an effort to get up and succeeded in doing so. He tried to run up Parker Street, and the defendant shot at him again, hitting him in the back. He fell on his face and laid there until the ambulance came and took him to the County Hospital. As a result of his wounds, Powell's right eye was removed and his left eye impaired to the extent that he could only perceive light and shadow.

The defendant Bell's version of the incident varies to some extent from that of the prosecuting witness Powell. The defendant testified that he had resided in Omaha for 6 years and 2 months, and was employed at the Cudahy Packing Company. Previous to coming to Omaha, he was engaged in farming in Missouri. On May 25, 1952, he left his home about noon and stopped at the Apex Bar. While standing between the bar and a table talking to his friend Willie Jones who was sitting at the table, Powell came in, put his arm around the defendant's shoulder, and drew a gun from his

pocket. He put the gun to the side of the defendant's head, and the defendant thought he tried to pull the trigger. Powell said to the defendant: "I am going to kill you." The defendant said: "What do you want to kill me for? I ain't done nothing to you." Powell put the gun down and walked out the door. The defendant thought Powell was gone. The defendant then left the Apex Bar, and Powell was just outside the door. He put a gun to the defendant's stomach and said: "I should kill you now." Powell then went down the street toward the Brown Bomber. The defendant went home, a distance of about 4 blocks from the Apex Bar, to get his gun, testifying that he was scared. He got his gun and went back, driving his car. He passed Powell at Parker Street, going south. He stopped his car in the street by the light post near the Apex Bar. He got out of his car, saw Powell with his hand in his waistcoat, and told him to stop. Powell was pulling a pistol out, and the defendant testified, "I hollered 'stop.'" The defendant also testified that he shot with the intention of scaring Powell. Powell ducked behind a car and came up with a pistol in his hand. The defendant reloaded his shotgun and fired a second shot. When Powell saw that the defendant was going to shoot again, he turned and started to run. The defendant then went home and told his wife to call the law so he could give himself up. Police officers testified that the defendant did give himself up voluntarily.

Percy Holmes testified that Powell came to his home, secured a blue steel automatic gun after a scuffle occurred in the home, and took the gun with him after threatening people who were in the house.

The defendant's witness, Willie Jones, testified to seeing Powell about 4 p. m. put a blue steel automatic gun against the head of the defendant when they were in the Apex Bar without any conversation taking place between Powell and the defendant.

A witness for the defendant testified that he saw

Powell in the Elite Club before the shooting; that Powell had a pistol and was wrestling around with it; and that somebody took the pistol away from Powell. He also testified that he saw the defendant shoot Powell, the first shot being fired from a distance of about 30 feet.

A witness for the State testified that about 4 p. m., he was in front of the Apex Bar, parked on the right or west side of the street facing south. He saw Powell when Powell came to the car and requested this witness to drive him home, stating that he had a gun. He showed the gun to this witness, and the witness declined to drive Powell home. Powell then proceeded west around the car onto the sidewalk on the west side of the car. The witness paid no further attention to Powell. He heard a shot, looked to the south, and saw the defendant with a shotgun. Powell was staggering. This witness did not know what either Powell or the defendant did after that; he ran from the scene of the shooting.

Another witness for the State testified that she and one Marie Wilson were on her front porch talking. She saw the defendant on the corner. Powell was running, and the defendant fired a shot which hit Powell and he fell.

The witness Marie Wilson testified that she was on her way to the Collins' house when she saw the defendant shoot Powell. At that time she was in front of the Apex Bar. Defendant was standing with his back facing south; Powell was standing with his back facing north. She also saw Powell run north toward Parker Street and the defendant run after him. The defendant told Powell to stop or he would shoot. Powell kept on running. The defendant shot him and he fell in front of the American Legion hall on Parker Street. The defendant walked toward Powell and said: "I told you to stop," and then ran up Parker Street. That was after the second shot. She testified that she saw the defendant raise his gun and shoot Powell in the face. Powell grabbed his face. They were 2 or 3 feet apart at that time.

While there is testimony of other witnesses with reference to certain facts regarding the shooting, we deem it unnecessary to summarize such evidence. Suffice it is to say that the evidence is sufficient to warrant submission of the case to the jury on the charges contained in the information against the defendant.

The defendant assigns as error that the trial court erred in denying the defendant the right to introduce evidence in support of his challenge to the array, or objections to the jury panel which was to try him; that by doing so, the trial court denied the defendant his statutory and constitutional rights guaranteed to him under Article I, section 11, of Constitution of the State of Nebraska, and under Article XIV, section 1, of the Amendments to the Constitution of the United States.

Taking up this assignment of error, the defendant argues that if the clerk of the district court and the jury commissioner had been permitted to testify, this testimony would have revealed that there were not 24 jurors for each judge hearing jury cases at the time this jury was to be impaneled; that the jury panel did not represent a fair cross-section of the people eligible for jury service in Douglas County; that there was left on the panel only a few employees of the packing houses whose wages were being paid partly by the State, the balance being made up by the employers; that the jurors remaining on the panel were for the most part housewives without the competence and experience to serve as jurors; and that the method of selection of the jury panel was such that no fair trial could be had by anyone by a cross-section of persons eligible for jury service.

In support of this assignment of error, the defendant cites section 25-1631.03, R. S. Supp., 1953, the effect of which is that there must be at least 24 petit jurors for each judge sitting with a jury.

The record shows the defendant's challenge to the array, the objections thereto being that of the panel of 200 jurors called for jury service at this jury term of

the district court, all but 55 were excused, and of the 55 remaining, one was a colored man. The great majority that were left were women, and a few employees of packing houses.

Section 25-1601, R. S. Supp., 1953, defines the qualifications of jurors. By an analysis of this section, we find nothing therein that disqualifies either a negro or a woman from jury service. Neither do we find any law which requires that a certain number of negroes or women shall be available for jury service or shall be included on the panel. Neither do we find constitutional or statutory requirements that a jury shall be composed of both whites and negroes in certain proportions, or that they shall be both male and female in certain proportions. The above assignment of error is without merit.

The defendant predicates error on the refusal of the court to give certain tendered instructions and, in addition, predicates error on each and every instruction given by the trial court on its own motion to the jury.

With reference to the instructions tendered by the defendant, instruction No. 1 reads as follows: "You are further instructed that if the complaining witness, Jessie Powell, maliciously attempted to shoot either the defendant, Johnnie Bell, or any other person, such an attempt would be a felony and Johnnie Bell, or any other private person, would have a right to arrest, without a warrant, Jessie Powell."

Requested instruction No. 3 deals with the same proposition, that is, a civil arrest under section 29-402, R. R. S. 1943, which provides as follows: "Any person not an officer may, without warrant, arrest any person, if a petit larceny or a felony has been committed, and there is reasonable ground to believe the person arrested guilty of such offense, and may detain him until a legal warrant can be obtained."

There is not the slightest evidence in the record that the defendant was attempting to arrest Powell or even

remotely had in mind to arrest him. He testified that he was mad because Powell had put a pistol on him. At the time of the shooting, the defendant had passed Powell. Powell was then going down the street apparently in a lawful manner, making no trouble at that time for anyone. The above tendered instructions were properly refused.

Requested instruction No. 2, by the defendant, reads as follows: "You are further instructed that a person has a right to defend himself if attacked, or if he has reasonable grounds to believe that he is about to be attacked, and to use such force and such weapons as are necessary to repel the assault, and if Jessie Powell had threatened to shoot and kill the defendant, and Jessie Powell had a gun, or that the defendant had reasonable grounds to believe that Jessie Powell had a gun, then the defendant, Johnnie Bell, would be justified in shooting Jessie Powell upon sight."

With reference to the requested instruction on self defense above set out, a man has no legal right to shoot another on sight merely because he suspects that the other man carries a gun, even though the other man may at some time have threatened to shoot and kill him. The defendant testified that when he returned from his home with his shotgun, he passed Powell on Parker Street going south. The defendant looked back and saw that it was Powell. He stopped his car, got out of it carrying his shotgun, and called to Powell to stop. When he saw Powell start to pull out a pistol, the defendant fired his shotgun at Powell. Under the facts above stated, manifestly the instruction tendered by the defendant on self defense is erroneous and was properly refused. It contained an inaccurate and incorrect statement of the law governing self defense. It had no application to the facts adduced at this trial. However, the court did properly instruct the jury on self defense, which instruction need not be set out in this opinion.

We have examined the other requested instructions

tendered by the defendant, all of which either contain an incorrect statement of the law as applied to the facts in the instant case, or are covered by instructions given by the trial court, and need not be discussed.

"To render the failure to give an instruction prejudicially erroneous, it is not sufficient that correct abstract propositions of law are therein embodied, but in addition it is requisite that such propositions be applicable to facts, at least in some degree, inferable from the evidence." Wells v. State, 47 Neb. 74, 66 N. W. 29.

An instruction which submits an issue to the jury not supported by the evidence is erroneous and should be refused. See City of South Omaha v. Wrzesinski, 66 Neb. 790, 92 N. W. 1045.

"An instruction which, in addition to a correct statement of the law, contains an assumption of the existence of a material fact upon which there was no evidence offered or received, and directs the attention of the jury to, and unduly emphasizes a part of, the evidence, should be refused." City of South Omaha v. Wrzesinski, *supra*.

It is not error for the trial court to refuse to give requested instructions which have no application or relevancy to the evidence adduced in the case, which are not supported by evidence, or which erroneously state the applicable principles of law, or where, in the light of all the instructions given, their refusal was not prejudicial to the defendant. See Trebelhorn v. Bartlett, 154 Neb. 113, 47 N. W. 2d 374.

Instructions to a jury must be considered together so that they may be properly understood, and, if as a whole they fairly state the law applicable to the evidence when so construed, error cannot be predicated on the giving thereof. See Peake v. Omaha Cold Storage Co., 158 Neb. 676, 64 N. W. 2d 470.

The defendant predicates error on the trial court's instruction No. 14 given on the court's own motion, which reads as follows: "There is evidence in this case that the defendant made certain statements to police

officers and a Deputy County Attorney shortly after his arrest.

"You are instructed that under the law you must not consider such statements as evidence in this case unless you first find that the State has proved, beyond a reasonable doubt, such statements were freely and voluntarily given by the defendant and not given as the result of force, threats or fear.

"If you find that the State has proved, beyond a reasonable doubt, that such statements were made by the defendant freely and voluntarily and not made as the result of force, threats or fear, then you may consider such statements as evidence along with the other direct and circumstantial evidence in this case.

"There is also evidence in this case that the defendant answered various questions at the preliminary hearing. This testimony was admitted because it may, or may not, affect the credibility of the testimony of the defendant.

"You are instructed that it is for you to determine from all the testimony, facts and circumstances shown, as to whether or not the statements made to the police officers and Deputy County Attorney, and the various answers to questions at the defendant's preliminary hearing, or the testimony given here, or either, are true."

The defendant predicates error on the part of the instruction above set out as follows: "There is also evidence in this case that the defendant answered various questions at the preliminary hearing. This testimony was admitted because it may, or may not, affect the credibility of the testimony of the defendant." Apparently it is the defendant's contention that this part of the instruction would tend to mislead the jury to believe that the defendant had testified falsely in the trial, and that his testimony was not worthy of credence. The defendant did make certain statements to the deputy county attorney which were made a part of the evidence in this case, but did not testify at the preliminary hearing. It

is not contended by the defendant that the instruction did not state the law correctly or that it was not applicable to the evidence presented. The objection made by the defendant is that the court inadvertently stated that questions were asked and answered at the preliminary hearing by the defendant.

Section 29-2308, R. R. S. 1943, provides in part: "No judgment shall be set aside, or new trial granted, or judgment rendered in any criminal case, on the grounds of misdirection of the jury, * * * if the Supreme Court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred."

It is not pointed out by the defendant's counsel in what manner the error of the court prejudiced the rights of the defendant. We conclude that the error is not of such a nature that prejudice may be presumed, and is such an error as comes within the provisions of section 29-2308, R. R. S. 1943, and does not justify a reversal of the case. See, Bassinger v. State, 142 Neb. 93, 5 N. W. 2d 222; Lorimer v. State, 127 Neb. 758, 257 N. W. 217; Crawford v. State, 116 Neb. 125, 216 N. W. 294.

"Misdirection of a jury not causing a substantial miscarriage of justice does not require that a judgment shall be set aside." Lorimer v. State, *supra.*

The defendant predicates error on the fact that three forms of verdict were given to the jury by the trial court, one of which was returned finding the defendant guilty. The other two forms were unaccounted for. The contention of the defendant was to the effect that the two forms not used by the jury should have been returned to the court. We find no law or rule of court which requires the jury to preserve the unused forms of verdict, and we are cited to none by the defendant. The assignment of error is without merit.

It is next contended by the defendant that the sentence in this case is excessive. The defendant was sen-

tenced to 4 years at hard labor in the State Penitentiary. Section 28-413, R. R. S. 1943, fixes the penalty for the crime of which defendant was convicted at imprisonment for not less than 1 year nor more than 5 years. The penalty imposed by the trial court was not the maximum penalty, and it must be presumed the trial court fixed the term of imprisonment after consideration of the case and in the exercise of judicial discretion. Section 29-2308, R. R. S. 1943, which authorizes the Supreme Court to reduce a sentence when in its opinion the sentence is excessive, was not intended by the Legislature as a directive to the court to reduce the sentence in every instance where it is asked, but only in those cases where it is apparent that the trial court has abused its judicial discretion and fixed a penalty which is clearly excessive. Under the facts in the instant case, the penalty imposed by the trial court was not clearly excessive, and the trial court did not abuse its judicial discretion in entering such sentence. The assignment of error is without merit.

There are other assignments of error which have been examined and are without merit and need not be discussed in this opinion.

For the reasons given herein, the verdict and judgment entered thereon are affirmed.

AFFIRMED.