STATE OF NEBRASKA, APPELLEE, V. MICHAEL GARZA,
APPELLANT.

226 N. W. 2d 768

Filed March 13, 1975. No. 39575.

Paul E. Watts, J. Joseph McQuillan, Gerald E. Moran, and George R. Sornberger, for appellant.

Clarence A. H. Meyer, Attorney General, and Harold Mosher, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

Appellant, Michael Garza, has appealed his felony conviction under section 28-532, R. R. S. 1943. The specific language of the information charged that he "did willfully, maliciously, and forcibly and with the intent to commit rape on the person of Vida (sic) M. Cernius in the dwelling hereinafter described, break and enter into said dwelling located at 3407 V Street, in the City of Omaha." The jury returned a verdict of guilty, and the trial court sentenced appellant to serve a term of 10 years in the Nebraska Penal and Correctional Complex. The appellant assigns as error the action of the trial court in instructing the jury on the issue of aiding and abetting, asserting that there is no evidence in the record to support such instruction. We affirm.

The facts of this case are that in the early morning hours of September 24, 1973, someone entered the bedroom of Vita Cernius at 3407 V Street in Omaha, Nebraska, awakened her in some manner by putting physical pressure on her chest and a hand over her mouth. At that time the intruder stated " 'Don't scream or I'll kill you.' " He made no attempt to kiss or fondle Vita, and after a struggle lasting approximately 30 seconds he struck her on the mouth and rushed out of the room. The bedroom was dark and Vita could not tell who the intruder was. Vita's father was awakened by the sounds of the struggle and attempted to stop the intruder in the hall, but was unsuccessful. Mr. Cernius did not get a good look at the intruder because of darkness. The intruder exited from the house through a back door, and in order to do so had to break the glass on the door with his foot. Omaha police officers arrived to investi-

gate the matter and discovered blood leading out the back door of the house. They were able to follow a trail of blood, which led them to 3121 T Street. They entered the house and found appellant lying on a couch with a bleeding foot. At the trial evidence was adduced as to an intimate relationship Vita had previously had with an individual who called himself Mike Gonzales, but she was unable to identify appellant as the same person whom she knew as Mike Gonzales. The police officer who interviewed Vita the day of the incident testified she told him that the intruder was possibly a Negro with an afro style haircut. There was also testimony adduced concerning an unidentified black man present at the preliminary hearing held in the case.

Appellant contends that it was error for the court to instruct the jury as to the law of aiding and abetting for the reason there was no testimony that anyone saw two people in the Cernius house during the incident described above. Moreover, the evidence in the record would seem to indicate that the appellant was tried as a principal, and not as an aider, abettor, or procurer.

Instruction No. 13 given by the court to the jury in this case was the standard N.J.I. No. 14.12 as follows:

"To be guilty of the crime charged, it is not necessary that the State prove that the defendant himself committed the unlawful act or acts in question.

"Whoever aids, abets or procures another to commit any offense may be prosecuted and punished as if he were the principal offender.

"*If you find from the evidence* beyond a reasonable doubt that the unlawful act or acts in question were committed by *another* person who was:

"1. Engaged by the defendant to commit the unlawful act or acts, or

"2. Engaged with the defendant in a common, concerted unlawful act or acts, or

"3. Incited or encouraged by defendant to commit the unlawful act or acts,

then the defendant is as guilty as if he himself committed the unlawful act or acts and it is your duty to find the defendant guilty.

"Aiding and abetting involves some participation in the criminal act and must be evidenced by some word, act, or deed. No particular acts are necessary; nor is it necessary that any physical part in the commission of the crime is taken or that there was an express agreement therefor. Mere encouragement or assistance is sufficient.

"On the other hand, evidence of mere presence, acquiescence, or silence is not enough to sustain the State's burden of proving the defendant guilty." (Emphasis supplied.)

It is clear from the above instruction that it is first necessary for the jury to find from the evidence beyond a reasonable doubt that the unlawful act or acts in question were committed by another person, before considering or applying the law of aiding and abetting to this case, as explained in the instruction and in section 28-201, R. R. S. 1943. Thus the jury was obviously required first to make a factual determination from the evidence that two or more persons were involved in the crime. It is the general rule that an instruction which submits an issue to the jury not supported by the evidence is erroneous. See Bell v. State, 159 Neb. 474, 67 N. W. 2d 762 (1954). Appellant contends there was no evidence to support the aiding and abetting instruction. Let us examine that contention.

It appears from the record that the suggestion there may have been more than one person in the house at the time of the incident was first raised by counsel for the appellant himself in the cross-examination of George Cernius, father of Vita. After he testified that he had seen a man 5 feet from Vita's bedroom, counsel for appellant asked him: "Well, you're assuming he came out of there, but there might have been more than one person. Did you see him come out of the bedroom?" The

State's objection to this question was, however, sustained by the court. Later in the trial police officer Pignotti was asked what description Vita Cernius gave him of the person in her room and he replied: "Her description was, 'A male, 20's, possible Negro.'" From this description alone the jury could have concluded that there were two persons in the Cernius house because the defendant was not a Negro but, according to the arresting officer's testimony, was a Mexican male. Further, when Vita Cernius was being cross-examined she was asked about a black man who attended the preliminary hearing. When asked if that black man was the man in her bedroom, Vita Cernius replied, "I don't know." Also, Anna Cernius, mother of Vita, testified that she saw a black male at the preliminary hearing who was seated in the same row she was sitting, and that she saw him get up and walk from the courtroom. She described him as tall and skinny, walked with a limp; and that he called out the name "Mike" a couple of times. It appears the foregoing testimony might well have raised the question in the minds of the jurors as to whether there was more than one intruder in the Cernius home the night of the crime. The trial judge was apparently of the same opinion as he stated during the conference on instructions: "And there's sufficient evidence introduced by the State, as well as Cross Examination, of the potentiality of more than one person." The court also noted after closing arguments that the instructions on aiding and abetting were to be submitted "because of the fact that it was dwelled upon in the opening statements and there was evidence both on Direct and Cross which raised some question," and further stated "Let the record show that, while the closing argument was not reported, the Court made notes, and Mr. Watts argued it with quite deliberation in his closing argument, and his statement was, in all probability, someone else was along with the Defendant and someone else was there. He repeated that several times." It

seems clear that the court in this case was faced with the dilemma as to whether or not to give the instruction on aiding and abetting, and in an abundance of caution, and for the purpose of resolving any doubts the jury may have had and to expedite further proceedings, gave the standard instruction set out above, which made it a question of fact for the decision of the jury as to whether there was more than one person in the home that night, and, if so, then whether the aforesaid instruction should be considered and applied in this case.

However, even assuming, without conceding, that there was no competent evidence to support the giving of the aiding and abetting instruction, we believe that the action of the court in giving such instruction would be erroneous only, and not ground for reversal, in the absence of a showing of prejudice. At the most it would constitute harmless error under section 29-2308, R. R. S. 1943, which provides, among other things: "No judgment shall be set aside, or new trial granted, or judgment rendered in any criminal case, on the grounds of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, if the Supreme Court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred." In Wilson v. State, 150 Neb. 436, 34 N. W. 2d 880 (1948), the defendant claimed, as did the appellant in this case, that the court committed reversible error in instructing the jury on the issue of aiding and abetting when it responded to no issue in the case. In discussing this contention, the court stated: "The effect of the instruction was to tell the jury that if the defendant aided, abetted, or procured another to commit the offense charged he could be prosecuted and punished as if he were a principal offender.

"An examination of the record discloses that the evidence was in proof of guilt of this defendant as a principal and not as an aider, abettor, or procurer hence

the instruction was upon an issue not presented. It was therefore, as contended, error to give it. The error was however without prejudice and cannot be considered ground for reversal. The giving of it could have in nowise prejudiced any substantial right of the defendant. Unless the error complained of could be considered as prejudicial to the rights of defendant it may not be considered here as ground for reversal. § 29-2308, R. S. 1943; Mason v. State, 132 Neb. 7, 270 N. W. 661; Jackson v. State, 133 Neb. 786, 277 N. W. 92." The same rule was reaffirmed in the recent case of State v. Morgan, 187 Neb. 706, 193 N. W. 2d 742 (1972). See, also, State v. Roan Eagle, 182 Neb. 535, 156 N. W. 2d 131 (1968).

We conclude, therefore, that the instruction given by the court was supported by evidence and was properly given, and, further, even assuming that the giving of the instruction was erroneous, it was clearly harmless error and not ground for reversal. We therefore affirm appellant's conviction.

AFFIRMED.