VALERIUS H. DAMME AND BERNICE M. DAMME,
HUSBAND AND WIFE, APPELLEES, V.
NEBRASKA PUBLIC POWER DISTRICT, A PUBLIC
CORPORATION AND POLITICAL SUBDIVISION, APPELLANT.

304 N.W.2d 45

Filed April 3, 1981. No. 43253.

Noyes W. Rogers of Albert, Leininger & Grant for appellant.

Christensen Law Offices, P.C., for appellees.

Heard before KRIVOSHA, C.J., WHITE, and HASTINGS, JJ., and HENDRIX and KNAPP, District Judges.

HENDRIX, District Judge.

This is an eminent domain action in which the defendant, Nebraska Public Power District, hereinafter

referred to as the District, appeals from a jury verdict and judgment for the plaintiffs, Valerius H. Damme and Bernice M. Damme, hereinafter referred to as the landowners, in the amount of $14,375.

The District asserts that the case should be reversed because the trial court refused to strike certain evidence and rejected certain other evidence. We affirm.

The landowners' property consists of a 152-acre farm with about 78.6 acres of cropland in two fields, about 68.4 acres of pasture, and about 5 acres used as a building site. The building site contains a garage, four granaries, a chickenhouse, a bin with auger, two small buildings, and a house occupied by the landowners. It is located in rural Wayne County just east of Highway 15, a blacktop road.

The taking is a right-of-way easement for overhang only for the construction and operation of a 345,000-volt transmission line. The line runs along the south side of landowners' property. It enters the property 768 feet east of the west line and about 430 feet from the house. The easement itself expands to a maximum of 80 feet in width and is about 1,872 feet long. A steel lattice structure, not on landowners' property, is located about 350 feet from the house. The closest phase wire, not on landowners' property, is located about 185 feet from the house.

The question presented by the refusal of the trial court to strike concerns the testimony of Henry B. Woodard, a neighboring farmer, called by the landowners. On direct examination he testified as to facts regarding his own farming operation, the landowners' farm, his knowledge of farm sales in the area, his knowledge of the taking, and the things which would affect a prospective purchaser after the placement of the line. He further testified as to his opinion of the fair market value of the landowners' property before and after the taking and placement of the line. On cross-examination Mr. Woodard testified that the line would not interfere with farming; that the main damage was to

the house; and that only feedlots of average size were located in the area but that larger feedlots could affect the value of the residence of landowners. On further cross-examination regarding the house, he was asked if it was his opinion that the line would devalue the house by $45,000, and the witness replied, "In my opinion, if I were buying the farm, it would." Whereupon, he was asked, "Well, then, you based your opinion on what you would think if you were buying the farm?" To which the witness replied, "Yes." At this point a motion was made to strike the testimony of the witness. It was overruled, and no further questions were asked of him.

We do not construe these answers to establish a failure of the witness to use market value as a basis for his originally given figures. It was not made clear, either, that the witness failed to make the original determination upon his knowledge of the farm and experiences with the market. Rather, his remarks may well have been merely a layman's method of expressing the effect the line would have upon a prospective purchaser. In any event, while the examination of the witness, both in direct and upon cross, was carried on in great measure by leading questions and brief answers, he did testify to matters other than values, and this testimony was certainly admissible. For example, testimony of the situation of landowners' farm and the number, location, and size of surrounding feedlots would not be conditioned upon his using a proper measure of damages. The motion to strike "the testimony" amounted to a motion to strike all the testimony of the witness, was too broad, and was correctly overruled. *Neldeberg v. City of Omaha*, 124 Neb. 511, 247 N.W. 45 (1933).

The evidence rejected by the trial court consisted of testimony of the sale price of development houses near, but outside, the city limits of Omaha and about 90 miles from the property of the landowners. Specifically, the testimony proposed by offer of proof would have shown the sale price of houses in close proximity to a 345,000-volt line as opposed to the sale price of similar houses

not in such close proximity. While the houses were similar to each other, they were not similar to landowners' property. The witnesses had not determined the sales to be voluntary by talking to the buyer or seller or otherwise. It is established law in this jurisdiction that in an eminent domain proceeding a wide discretion must be granted the trial judge in determining the admissibility of sales, and the evidence should not be admitted where there is a marked difference in the situation of the properties or unless the judge is satisfied that the price paid was sufficiently voluntary to be a reasonable index of value. *Anderson v. State,* 184 Neb. 467, 168 N.W.2d 522 (1969); *Swanson v. State,* 178 Neb. 671, 134 N.W.2d 810 (1965). The proffered evidence fails in both categories. The sales sought to be shown are of properties which have no real similarities, they having the differences inherent between rural and suburban properties. The District points to the case of *Y Motel, Inc. v. State,* 193 Neb. 526, 227 N.W.2d 869 (1975), which permits evidence of sales of comparable property in other states. The difference, of course, is that in *Y Motel, Inc.,* the other properties were shown to be comparable, even though far apart in distance. In the instant case, the properties are simply not comparable.

The District further argues that the sale prices offered should be admitted as rebuttal, since one of the landowners testified without objection that nobody wants to be close to a big power line and other witnesses testified without objection that the value of the house would be reduced by virtue of the power line. From its earliest days to modern times this court has held that improper evidence is not made admissible merely because it is designed to meet other evidence, and this is true regardless of the propriety of the other evidence. *McCartny v. The Territory of Nebraska,* 1 Neb. 121 (1871); *Conley v. Hays,* 153 Neb. 733, 45 N.W.2d 900 (1951). In every eminent domain action there are alleged elements of damages which might be met by

showing sales of dissimilar properties. The reasoning required to permit the proposed evidence in this case would be a departure from precedent and logic. It would open the door to evidence where the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and undue delay. Neb. Rev. Stat. § 27-403 (Reissue 1979).

AFFIRMED.

WHITE, J., dissenting.

I disagree. The entire basis of the landowners' claim in this case is the perceived undesirability of living in close proximity to a high voltage power line, and the negative effect on fair market value. Expert witnesses testified to the existence of that perceived undesirability and were not able to demonstrate it in fact. The appellant's attorney attempted to prove the reverse of the proposition by the most telling method — substantially identical properties, one close to a high voltage line, the other not, selling for similar prices. Whether appellant could have demonstrated that both were voluntary sales cannot be known as it was prevented from introducing such evidence. I believe the refusal to receive the evidence was an abuse of the trial court's discretion and prejudiced the appellant. The important fact, overlooked by the trial court and the majority, is the purpose for which the evidence was offered. It was proper and, accordingly, I would reverse and remand.