STATE OF NEBRASKA, APPELLEE, V. DAVID K. HARRISON, APPELLANT.

378 N.W.2d 199

Filed December 20, 1985.   No. 85-123.

James Martin Davis, for appellant.

Robert M. Spire, Attorney General, and Calvin D. Hansen, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, J.

The defendant, David K. Harrison, was convicted of first degree murder for the June 4, 1984, shooting death of his wife, Maria F. Harrison, and sentenced to life imprisonment.

The defendant and his wife had separated in January of 1984. Their marriage was troubled by infidelity and by fights which sometimes became physical in nature. On Saturday, June 2, 1984, the couple fought at Susan Domek's home. Domek, the defendant's sister, testified that during that fight Maria placed the defendant's gun to her head and threatened to take her own life. After being disarmed by the defendant, Maria left the house, taking the couple's two daughters with her. She was to have returned the children later that day so that the defendant could take them swimming, but did not do so.

The defendant made several attempts to locate the children that night by making phone calls and by going to Maria's mother's home as well as to the home of mutual friends. The friends' home was located directly behind Maria's mother's home. One of the residents there, Linda Heriger, testified that Maria was at the house that night and hid in a closet when the defendant arrived. Heriger described the defendant as upset, apparently because he could not find Maria. Heriger also testified that the defendant told her that the longer Maria stayed away, the madder he was getting and that Maria "would be dead meat" the next time he saw her.

On the following day, Sunday, June 3, 1984, when the defendant returned to the Heriger home looking for Maria, she again hid in a closet. The defendant returned to Heriger's residence later that afternoon and Maria avoided him by returning to the closet. Maria stayed with Heriger that evening until 10:30 p.m., when she returned to her mother's home.

On Monday, June 4, 1984, the defendant went to Maria's mother's home, arriving at approximately 8:45 a.m. Susan Domek testified that his stated intention for going there was to pick up his daughters.

The defendant's version of what transpired that morning is

as follows. Maria allowed him into the house when he knocked on the back door. Once inside, the defendant asked Maria why she was taking the girls around strange men. When Maria ignored him, he began to hit her. She then went to the bathroom. He followed her there to change his pants. When the defendant began emptying his pockets to change his pants, she grabbed for a gun as he was removing it from his pants pocket. A struggle ensued and the gun accidentally discharged, striking Maria. The defendant then dialed 911 for help.

At trial there was expert testimony by Marcellus Deats, a specialist in firearm identification, that to fire the gun involved in the shooting, the hammer would have had to have been pulled back with the thumb to its fullest "rearward" point and then fired by pulling the trigger. Deats also testified that his tests of the gun showed no malfunctions but that the gun could be made to accidentally discharge by "a blow on the weapon hammer while it was seated on a cartridge." The defendant testified that the gun had previously accidentally discharged.

There was also testimony by Dr. Jerry Wilson Jones, the pathologist who performed the autopsy on Maria Harrison, that the characteristics of the gunshot wound to Maria's head were "unequivocally" those of a tight contact wound, meaning that the muzzle of the weapon was held tightly against the skin at the time of discharge.

The defendant's first assignment of error on appeal is that the district court erred in refusing to give his proposed instruction No. 6 on excited utterances.

At trial, evidence and testimony were adduced to show that the defendant had consistently maintained that the shooting was an accident. The defense emphasizes the fact that the defendant's first words to the 911 emergency operator were "Sir, I accidentally shot and killed my wife, please hurry." The first police officer on the scene testified that the defendant was hysterical. When asked what had happened, the defendant responded that he and his wife had argued and that his gun had accidentally discharged, striking her. The defendant also told the officer that his wife was still alive and that he wanted the officer to help her.

A paramedic who arrived on the scene testified that he was

met outside the house by the defendant, who implored him to "Help her, help her. She's still alive." In subsequent contacts with police officers investigating the shooting that morning, the defendant, who remained hysterical, continued to repeat the claim that Maria had grabbed for the gun and that he had not meant to kill her.

The requested instruction, which states the rationale for the admission of excited utterances, was as follows:

> During the course of this trial hearsay evidence, consisting of out of Court statements, has been adduced. Hearsay is a statement other than a statement made in Court at trial offered into evidence to prove the truth of the matter asserted. Hearsay is generally inadmissible as evidence unless those statements qualify as an exception to the hearsay rule.
>
> An excited utterance is a statement that relates to a startling event or condition made while the declarant was under the stress or excitement caused by an event or condition.
>
> Excited utterances are admissible even though they are hearsay because they may, in themselves, possess circumstantial qualities of trustworthiness, and because circumstances surrounding an incident may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of fabrication.

The defendant contends that without the requested instruction the jury was without proper guidance as to how to deal with his excited utterances and as to the weight they should be accorded.

The trial court was not required to give the requested instruction.

It is the province of the trial court to determine the admissibility of evidence, not that of the jury. *State v. West*, 217 Neb. 389, 350 N.W.2d 512 (1984). Once the trial court has made a determination as to admissibility, the jury is not required to reexamine that ruling. *State v. Brittain*, 212 Neb. 686, 325 N.W.2d 141 (1982).

It is, however, solely within the jury's province to weigh the

evidence and to judge the credibility of witnesses and their testimony. *State v. Kakela*, 218 Neb. 843, 359 N.W.2d 786 (1984); *State v. Meadows*, 203 Neb. 197, 277 N.W.2d 707 (1979). The jury, as such, has the right to credit or reject any part or the whole of the testimony heard. *State v. Meadows, supra*; *State v. May*, 174 Neb. 717, 119 N.W.2d 307 (1963), *modified* 175 Neb. 318, 121 N.W.2d 564. A jury instruction which directs the attention of the jury to and unduly emphasizes a part of the evidence should be refused. *Bell v. State*, 159 Neb. 474, 67 N.W.2d 762 (1954).

In the present case the proposed instruction would tend to lead the jury to the conclusion that "excited utterances" are more credible and should be accorded greater weight than other types of evidence. As such, the instruction infringes upon the jury's duty to determine the weight and credibility to be accorded the evidence. Instructions which are likely to confuse or mislead the jury should not be given. *State v. Samuels*, 205 Neb. 585, 289 N.W.2d 183 (1980).

The defendant next assigns as error the trial court's sustaining of a hearsay objection by the State to testimony by Barry Blessing, the man from whom the defendant obtained the gun 6 to 8 weeks prior to the shooting. Specifically, the State objected to Blessing's testimony as to why the defendant wanted the gun. The defendant's offer of proof was as follows:

> The defendant would expect to ask and the defendant would expect the witness to answer as to why he obtained the gun.
>
> The defendant would ask him: Did you have any conversations with David Harrison concerning why he obtained that gun? And the answer would be that David came back to him and stated that he was worried about the area that he was living in, which was close to Carter Lake, and asked if he could have the gun back for a while.

The defendant maintains that Blessing's testimony was admissible under Neb. Rev. Stat. § 27-803(2) (Reissue 1979), as relating to the defendant's state of mind, to his absence of motive, and to premeditation. Exclusion of this evidence, it is claimed, prevented the defendant from receiving a fair trial. The essence of the defendant's argument is that without

Blessing's testimony the defendant had no evidence from the best witness available to rebut the prosecution's contention that he had obtained the gun to kill his wife.

A declaration offered to show the defendant's state of mind which is too remote in point of time should be excluded as lacking probative value. 2 C. Torcia, Wharton's Criminal Evidence § 307 (13th ed. 1972). In earlier cases we have refused to characterize statements as admissible under § 27-803(2) where they were offered as evidence of the defendant's state of mind at a time not material to the case. *State v. Rowe*, 210 Neb. 419, 315 N.W.2d 250 (1982) (out-of-court statements not relevant to the defendant's mental state at the time of the alleged crimes are inadmissible hearsay); *State v. Pelton*, 197 Neb. 412, 249 N.W.2d 484 (1977) (statement not within § 27-803(2) exception because defendant's state of mind at the time of the statement was not a material fact).

In the present case the suppressed testimony related to a conversation which occurred 6 to 8 weeks before the shooting. The defendant's state of mind in April of 1984 was irrelevant. It was his state of mind at or about the time of the shooting that was the relevant fact in this case. *State v. Rowe, supra.*

The defendant's final assignment of error relates to the trial court's refusal to give his proposed instruction No. 3, which provides as follows:

> The question of the motive of the defendant to kill Maria Harrison has been raised during the trial. While motive is not an essential element of the crime of 1st Degree Murder, evidence of lack of motive is always permissible as a circumstance favorable to the accused. Such evidence is to be considered by you with the other evidence bearing on the question of guilt or innocence, and is to be given such weight as you believe it to be fairly entitled to.

The defendant's reliance on *Trobough v. State*, 119 Neb. 128, 227 N.W. 443 (1929), is misplaced. In that case this court noted that "while absence of *all evidence* of motive in a case may be conceded to be circumstances favorable to the defendant, still it is not the province of the court to instruct the jury of the weight or bearing to be given to any particular circumstance . . . ."

(Emphasis supplied.) *Id*. at 134, 227 N.W. at 445. We did, however, conclude that to the extent there was an absence of evidence as to motive, the jury should be instructed that such is a circumstance to be considered with all others in determining the guilt or innocence of the accused.

This case is similar to *State v. Samuels*, 205 Neb. 585, 289 N.W.2d 183 (1980). In *Samuels* the defendant was convicted of second degree murder and on appeal complained that the trial court had committed error in failing to give an instruction which was nearly the same as the defendant's proposed instruction No. 3.

As in *Samuels*, the facts in the present case do not require an instruction on motive because there is evidence of motive. The defendant himself testified that the marital problems experienced by the couple were linked to Maria's infidelity. There is evidence that the defendant was greatly angered by not being able to locate his wife on the 2 days preceding the shooting.

Furthermore, the statement in the proposed instruction that evidence as to a lack of motive is a "circumstance favorable to the accused" is objectionable because, as in *Samuels, supra*, it infringes upon the jury's domain to act as the sole arbiter of the credibility and weight to be accorded the evidence. *Egbert v. State*, 113 Neb. 790, 205 N.W. 252 (1925). The district court was, therefore, correct in refusing to give the instruction which would have tended to mislead or confuse the jury. *State v. Samuels, supra*.

There being no error, the judgment is affirmed.

AFFIRMED.