STATE OF NEBRASKA, APPELLEE, V. LARRY SCOTT COFFMAN,
APPELLANT.
416 N.W.2d 243

Filed December 11, 1987.    No. 87-059.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays, for appellant.

Robert M. Spire, Attorney General, and Elaine A. Catlin, for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

WHITE, J.

The defendant, Larry Scott Coffman, was convicted by a jury of first degree sexual assault under Neb. Rev. Stat. § 28-319(1)(a) (Reissue 1985), a Class II felony. The court found the defendant to be a habitual criminal and sentenced him to an indeterminate term of incarceration of from 10 to 12 years.

Thirteen errors are assigned which can be summarized as follows: (1) The court abused its discretion in overruling the defendant's motion for a protective order and appointment of a special prosecutor; (2) the court erred in finding the evidence sufficient to submit the question of guilt to the jury and to

support a finding of guilt by the jury; (3) the court erred in sustaining the State's hearsay objection to a question asked of Shannon Mills; (4) the court erred in overruling defendant's request that Bradley Carper be dismissed as a juror and that a mistrial be declared; (5) the court erred by giving two separate instructions which stated that they could consider the defendant's prior felony convictions in weighing his credibility; and (6) the court erred in finding the defendant to be a habitual criminal, resulting in an excessive sentence. We affirm.

The first assignment of error was not addressed in the appellant's brief and was later abandoned at oral argument. Error which is assigned but not discussed will not be considered by this court. Neb. Ct. R. of Prac. 9D(1)d (rev. 1986); *Meis v. Grammer*, 226 Neb. 360, 411 N.W.2d 355 (1987).

The second assignment of error goes to the sufficiency of the evidence. In *State v. Dwyer*, 226 Neb. 340, 344, 411 N.W.2d 341, 344 (1987), we set forth the applicable rules of law in this area:

> In Nebraska, it has been held that a trial court will be justified in directing a verdict of not guilty only where there is a total failure of competent proof to support a material allegation in the information, or where the testimony is of so weak or doubtful a character that a conviction based thereon could not be sustained. *State v. Meints*, 225 Neb. 335, 405 N.W.2d 15 (1987); *State v. Donnelson*, 225 Neb. 41, 402 N.W.2d 302 (1987). In determining whether the evidence is sufficient to sustain a conviction in a jury trial, this court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence. Those determinations are within the province of the jury. *State v. Meints, supra; State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986). A jury verdict of guilty will not be overturned on appeal unless it is based on evidence so lacking in probative force that it can be said as a matter of law that the evidence is insufficient to support the verdict. *State v. Joy*, 220 Neb. 535, 371 N.W.2d 113 (1985).

The verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v.*

*Thomte*, 226 Neb. 659, 413 N.W.2d 916 (1987). After a jury has considered the evidence and returned a verdict of guilty, that verdict on appeal may not, as a matter of law, be set aside for insufficiency of evidence if the evidence sustained some rational theory of guilt. *State v. Wilkening*, 222 Neb. 107, 382 N.W.2d 340 (1986).

The defendant does not deny that he had sexual intercourse with the victim, but claims that the act was consensual. The defendant argues that the testimony of the victim with respect to the issue of consent is of so weak and doubtful a character that no reasonable juror could find beyond a reasonable doubt that the defendant had forcible sexual intercourse with the victim. With this we cannot agree.

The State produced overwhelming evidence that the act was in fact forceful. The victim supplied the jury with a detailed account of the event. She met the defendant in April of 1986 while they were participating in a study at Harris Laboratories. On June 12, 1986, she had a chance meeting with the defendant at a liquor store. She invited the defendant and three of his friends to her residence for a beer. The defendant agreed and proceeded with his friends to the victim's trailer house, where they all sat around the kitchen table for several hours. The victim went to the bathroom, and when she came out, she realized she was alone in the trailer with the defendant. The defendant grabbed her and shoved her into the bedroom. She struggled and screamed, and the defendant responded by punching her in the face, approximately 15 times in all. The defendant ripped off the two shirts the victim was wearing and took off her shorts. The victim testified that she screamed, from time to time, for him to quit hitting her and for assistance. In response to this the defendant would cover her mouth and nose with his hand. The entire assault lasted about 45 minutes.

The victim's testimony was corroborated by three neighbors. Sonja Buchanan testified that she heard the victim shouting, "Don't hit me any more," and also heard the name Larry. She stated that the screaming lasted on and off for about 45 minutes.

After the assault the victim went to Tina Milburn's house. Milburn testified that the victim was very upset and reported to

her that she had been raped. Milburn observed that the victim's face was red and swollen and that she had been beaten up. Another neighbor, Ron Lasher, testified that he heard the victim call for help approximately seven times.

Dr. Kent Eakins, who examined the victim after the assault, testified that there were fresh bruises on her face. Margaret Bunn testified that she observed the victim earlier in the day and did not notice any redness or bruises on her face. The two shirts which were ripped off the victim were also in evidence.

Absent an eyewitness, it is hard to imagine how the victim's testimony with regard to consent could have been more thoroughly corroborated. It can hardly be said that such testimony is weak or doubtful. There was competent proof to submit the issue of nonconsent to the jury, and there was sufficient evidence to support the jury's guilty verdict. The defendant's second assignment of error is therefore without merit.

In his third assignment of error defendant contends that the court abused its discretion by sustaining the State's hearsay objection to a question posed by defense counsel of his witness, Shannon Mills. Shannon Mills was among those present at the victim's trailer on the night in question. Mills was called by the defense in an apparent effort to corroborate the defendant's version of the events which transpired that night. On cross-examination, the State asked Mills whether Gloria Pulhamus, a friend of the defendant's, had told him what to tell the police in regard to their investigation of this case. On redirect, counsel for defense attempted to show that Mills had not discussed that matter with Pulhamus. He asked the witness: "[D]id you see her [Gloria Pulhamus] again before you talked to Officer Martin?" Mills' response was, "No, because that was the night she was trying to kill herself with some drugs." On recross, the State followed up on the witness' comment as follows:

Q. Mr. Mills, you indicated that Gloria Pulhamus was really upset and was trying to kill herself with some drugs?

A. Yeah, because I had to call the cops and they had to break her door in.

Q. Was that because she was so upset about what was

going on with Larry?

A. Yeah.

. . . .

Q. You care about Gloria a lot; don't you?

A. As a friend, yes. As far as any physical contact or anything like that or anything else, I have nothing in common.

Q. But you don't want her to commit suicide; do you?

A. No.

Q. Do you think that that's a real possibility for Gloria?

A. Well, she would have. . . .

Q. Have you ever known her to try to commit suicide before?

A. No.

Q. So did you think that this was a serious threat?

A. Yes, I did.

The State's line of questioning on cross-examination and again on recross was clearly designed to show the jury that this witness had fabricated his story. The implication on recross was that Shannon Mills testified as he did because he was afraid Pulhamus would commit suicide if the defendant were convicted.

On further redirect, counsel for defendant attempted to show that Gloria Pulhamus was upset because she was jealous of the defendant and the victim, and not because she feared that the defendant would be convicted. He asked Mills, "What was it she [Gloria Pulhamus] told you she was upset about?" The State objected on the grounds that the question called for hearsay. The objection was sustained both before and after an offer of proof on the matter.

The defendant, in his brief, admits that the question called for hearsay, but argues that it was offered in rebuttal of the State's own incompetent evidence. Assuming, for the sake of the defendant's argument, that the State did elicit a response based upon hearsay from Shannon Mills, it nevertheless cannot be said that the court erred in sustaining the State's objection. It has long been the rule in Nebraska that the admission of improper evidence on one side provides no justification for the other party to introduce its own incompetent or improper

evidence in rebuttal. *Damme v. Nebraska P. P. Dist.*, 208 Neb. 478, 304 N.W.2d 45 (1981); *Conley v. Hays*, 153 Neb. 733, 45 N.W.2d 900 (1951); *Dodge v. Kiene*, 28 Neb. 216, 44 N.W. 191 (1889); *McCartny, plaintiff in error, v. The Territory of Nebraska*, 1 Neb. 121 (1871).

We recognize that other jurisdictions have held that the party who first introduces improper evidence cannot object to the admission of evidence from the other party relating to the same matter. (See 31A C.J.S. *Evidence* § 190 (1964) for a compilation of the cases.) In addition, Neb. Rev. Stat. § 27-106 (Reissue 1985), formerly Neb. Rev. Stat. § 25-1215 (1943), provides in part:

> When part of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other. When a letter is read, all other letters on the same subject between the same parties may be given. When a detached act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood, or to explain the same, may also be given in evidence.

Under this rule the admission of such evidence is not a matter of right, but rests with the sound discretion of the court. *Spani v. Whitney*, 172 Neb. 550, 110 N.W.2d 103 (1961). Given the circumstances of this case, it could not reasonably be said that the trial judge abused his discretion or that the defendant was prejudiced in absence of the proffered testimony. For these reasons the defendant's third assignment of error is without merit.

In his fourth assignment of error, defendant submits that juror Bradley Carper should have been dismissed and a mistrial declared. After Tina Milburn had testified for the State, Carper, during recess, informed the court that, contrary to what he said on voir dire, he knew Milburn but did not recognize her married name. Carper indicated off the record that it would not influence his ability to be an impartial juror. Counsel for the defendant discussed the matter with his client and informed the court in chambers that they were prepared to waive any objection as to Carper's remaining on the jury. The

court later summarized these events for the record, after which the defendant asked that Carper be excused and motioned for a mistrial, notwithstanding the previous waiver of objection. This motion was submitted without argument, and no attempt was made to produce evidence that the juror was prejudiced. The court overruled the motion and in so doing observed that there was no showing that this juror could not be fair and impartial in his judgment.

The defendant now claims that the court erred in refusing to strike Carper from the jury without first establishing on the record whether the juror's acquaintance with Tina Milburn caused him to form an opinion in the case. The defendant admits that the record does not demonstrate how he was prejudiced, but contends that the court was obligated to voir dire the juror on the record before determining that there was no prejudice.

The competency of a juror is generally presumed, and the burden is on the challenging party to establish otherwise. *State v. Beasley*, 183 Neb. 681, 163 N.W.2d 783 (1969); *Medley v. State*, 156 Neb. 25, 54 N.W.2d 233 (1952). A juror is not incompetent merely because he is an acquaintance of one of the witnesses. *State v. Dodson*, 551 S.W.2d 932 (Mo. App. 1977). The record contains no evidence and the defendant made no allegation of any misconduct on the part of the juror which would have warranted an evidentiary hearing on the matter. *State v. Steinmark*, 201 Neb. 200, 266 N.W.2d 751 (1978). The defendant produced no evidence that this juror was other than competent. Retention or rejection of a juror is a matter of discretion with the trial court, and there is nothing in the record to show that such discretion was abused. *State v. LeBron*, 217 Neb. 452, 349 N.W.2d 918 (1984). The juror gave the court assurance off the record that his acquaintance with the witness would not affect his impartiality. The fact that the judge chose simply to recite the juror's assurance for the record rather than voir dire the juror on the record is of no consequence.

Defendant's fifth assignment of error is that the court erred in giving two separate jury instructions which unduly emphasized the defendant's prior felony convictions. The court's instruction No. 14, taken from NJI 14.81, states:

You are the sole judges of the credibility of the witnesses and the weight to be given to their testimony. In determining the weight which the testimony of the witnesses is entitled to receive, you should consider:

1. Their interest in the result of the suit, if any;

2. Their conduct and demeanor while testifying;

3. Their apparent fairness or bias or relationship to the parties, if any such appears;

4. Their opportunity for seeing or knowing the things about which they have testified;

5. Their ability to remember and relate accurately the occurrences referred to in their evidence;

6. The extent to which they are corroborated, if at all, by circumstances or the testimony of credible witnesses;

7. The reasonableness or unreasonableness of their statements;

8. Evidence of previous conviction of a felony;

9. Evidence of previous statements or conduct inconsistent with their testimony at this trial;

10. All other evidence, facts, and circumstances proved tending to corroborate or contradict such witnesses.

The court's instruction No. 15, taken from NJI 14.62, states: "Evidence has been received showing that defendant has been convicted of committing felonies. This evidence can be considered by you only as affecting his credibility, and may not be considered by you as establishing the truth or falsity of the charges against defendant in this case."

The defendant relies on *State v. Harrison*, 221 Neb. 521, 378 N.W.2d 199 (1985), for the proposition that a jury instruction which unduly emphasizes a part of the evidence should be refused. In *Harrison*, counsel for defense requested an instruction which attempted to convey to the jury that "excited utterances" are more credible and should be accorded greater weight than other types of evidence. The court said that the requested instruction was properly refused because it would have infringed upon the jury's duty to make its own determination as to the weight and credibility to be accorded the evidence. A survey of the Nebraska cases tells us that before an instruction can be said to unduly emphasize a part of the

evidence, it must misrepresent either the totality or the existence of the evidence, or, as in *Harrison*, it must infringe upon the province of the jury. See, e.g., *Bell v. State*, 159 Neb. 474, 67 N.W.2d 762 (1954); *City of South Omaha v. Wrzesinski*, 66 Neb. 790, 92 N.W. 1045 (1902); *Markel v. Moudy*, 11 Neb. 213, 7 N.W. 853 (1881).

There is nothing in either instruction in question which misrepresented the evidence or misguided the jury as to its duty. Both instructions were necessary and served different purposes. Instruction No. 14 was given to show how prior convictions relate to the overall judgment of credibility of any witness, and instruction No. 15 was given to prevent the jury from considering the prior felonies as establishing the truth of the present charge against the defendant.

In the final assignment of error the defendant contends that certain exhibits offered by the State in support of the habitual criminal allegation were not competent evidence of the defendant's prior convictions. Neb. Rev. Stat. § 29-2222 (Reissue 1985) provides:

At the hearing of any person charged with being an habitual criminal, a duly authenticated copy of the former judgment and commitment, from any court in which such judgment and commitment was had, for any of such crimes formerly committed by the party so charged, shall be competent and prima facie evidence of such former judgment and commitment.

In *State v. Bundy*, 181 Neb. 160, 147 N.W.2d 500 (1966), we concluded that § 29-2222 does not confine the proof on the issue of the defendant's prior convictions to the documents therein mentioned. In proof of the defendant's prior convictions, the State offered authenticated copies of two prior judgments. Instead of the actual commitment papers, the State offered certified copies of the sheriff's return and the warden's receipt, which evidenced the defendant's actual commitments to the Nebraska Penal and Correctional Complex. The State was in substantial compliance with the requirement of proof of commitment. The defendant's contention that the trial court erred in finding him a habitual criminal is therefore without merit.

We cannot sustain any of the assignments of error urged by the defendant. It therefore follows that the judgment and sentence of the district court must be and are affirmed.

AFFIRMED.