STATE OF NEBRASKA, APPELLEE, V. DENNIS KRUTILEK, APPELLANT.
567 N.W.2d 797

Filed July 1, 1997.    No. A-96-804.

Karen Falcone Givens for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

Miller-Lerman, Chief Judge, and Irwin and Inbody, Judges.

Inbody, Judge.

## INTRODUCTION

Dennis Krutilek appeals his conviction and sentence for theft of property valued at over $1,500. On appeal, Krutilek argues that the trial court erred in denying his motion to dismiss a juror, in allowing evidence of Krutilek's prior automobile theft convictions, and in failing to grant his motion for a new trial. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

In the late evening hours of September 16 or the early morning hours of September 17, 1995, a 1987 silver Chevrolet Celebrity, vehicle identification number 1G1AW51R9H6237035, owned by Karen Goswick and primarily driven by her daughter, Julie Goswick (Goswick), was discovered to be missing.

On September 16, 1995, Goswick parked the car in a bank parking lot near the Eagle's Club located at Military and Main in Fremont, Nebraska, where she worked as a bartender. At some point later that evening, Goswick went to the parking lot to move the car closer to the building and discovered that it was no longer there. After asking her boyfriend and her parents if they had moved the car and learning that they had not, Goswick called the police and reported the car stolen.

Following a police investigation, on October 17, 1995, the stripped car was located in Dodge County on property owned by Andy Andrews. Among other things, the car was missing the engine, which was subsequently located at Autotech, an automobile repair business that buys automobile parts. The owner of Autotech, Robert Stiver, testified that on or about September 28, 1995, Krutilek brought the engine into the shop and sold it to him. Stiver stated that Krutilek told him that the engine was from a 1987 Oldsmobile that had been wrecked and that he was trying to recoup some money from it by selling pieces of the car.

Krutilek was arrested for the offense, and on February 27, 1996, an amended information was filed in the Dodge County District Court charging Krutilek with the theft of movable property valued at over $1,500. See Neb. Rev. Stat. § 28-511(1) (Reissue 1995). Theft of property valued at over $1,500 is a Class III felony. Neb. Rev. Stat. § 28-518(1) (Reissue 1995). The information also contained an allegation that Krutilek was a habitual criminal. See Neb. Rev. Stat. § 29-2221 (Reissue 1995). On April 24, the State filed a notice that, pursuant to Neb. Rev. Stat. § 27-404(2) (Reissue 1995), the State planned to offer as part of its case in chief Krutilek's two prior convictions of theft of an automobile.

Trial in this matter was held on May 6 and 7, 1996. Karen Goswick was called as the second witness for the prosecution.

Following her testimony, an exchange with one juror, outside of the presence of the rest of the jury, proceeded as follows:

THE COURT: . . . I understand you may be acquainted with the last witness' daughter; is that correct?

[Juror]: Yes. I am a member of the Eagle's Club and I know her from down there. I didn't know her last name.

THE COURT: Now, other than that you know her, is this a close personal relationship or just a casual acquaintance?

[Juror]: Casual. We visit down there.

THE COURT: Is there anything about that that would make you less than a fair and impartial juror?

[Juror]: I can't say because —

THE COURT: Well —

[Juror]: We visited long enough, kind of friends.

THE COURT: Have you ever visited about this case?

[Juror]: No.

THE COURT: Well, I guess the answer is kind of up to you. All cases are difficult, you know. And all relationships are difficult. The question is: Ultimately is your mindset that you feel that you could be a fair and impartial juror both to Mr. Krutilek and to the State?

[Juror]: I would hate to say that our friendship would sway me.

THE COURT: And do you feel that you would do your best to set that aside?

[Juror]: I'll do my best.

Upon further questioning by defense counsel, the juror stated that Goswick had never talked to him about her car's being stolen, that he had known Goswick for approximately 1 year, and that he considered her to be a friend.

The defense moved to have the juror removed and also moved for a mistrial. The prosecutor commented that he did not feel there was sufficient evidence to dismiss the juror for cause, but that the State would prefer to have the juror dismissed rather than to have a mistrial declared. The trial court refused to remove the juror and overruled the motion for mistrial because the juror had indicated that he would set aside his friendship and attempt to decide the case based on the evidence.

The evidence, as elicited by the State, detailed the events as previously stated. Additionally, Goswick testified that she knew Krutilek through mutual friends and that she had never given him permission to take her car, had not asked him to take her car, had not given him keys to the car, and had not paid him to take her car. Evidence was also adduced that Goswick had received the car pursuant to a divorce decree entered on August 29, 1995, which date was prior to the car's being reported stolen.

The State also called Jennifer Andrews, an acquaintance of Krutilek's, to the stand. Andrews testified that during middle to late September 1995, Krutilek brought a silver or gray car to her mother's property in Dodge County and asked if he could rent half of a garage to store the car. In payment for the space, Krutilek gave Andrews a stereo, which she pawned. Further, Andrews testified that she saw Krutilek remove the engine from the car. Finally, evidence was adduced that Karen Goswick received a settlement from her insurance company of $2,825 for the car.

Following the close of the State's case, Krutilek testified in his own defense. Krutilek claimed that Goswick wanted him to hide the car from her ex-husband and that she gave Krutilek a key to the car. Krutilek also claimed that after he had hidden the car for Goswick, she told him to just keep the car. Further, Krutilek denied pulling the engine out of the car, but he did not deny selling the engine.

Krutilek's girl friend, Penny Adams, testified that in September 1995, Goswick gave Krutilek a key to her car because she wanted the car hidden from her ex-husband. Adams also testified that Goswick gave Krutilek money to hide the car.

During cross-examination, the State introduced evidence of Krutilek's two prior convictions for automobile theft. Defense counsel timely objected to the admissibility of the evidence on the grounds that the unfair prejudice to Krutilek greatly outweighed any probative value that the evidence might have. A hearing was held outside the jury's presence; the court overruled the objection, and the jury was allowed to hear Krutilek testify that he had two prior convictions for automobile theft. On May 7, 1996, the jury found Krutilek guilty of the charged

offense. On May 15, in a separate proceeding, the trial court found that Krutilek was a habitual criminal as defined under § 29-2221.

On May 16, 1996, Krutilek filed a motion for new trial, which was subsequently overruled by the trial court. On June 17, Krutilek was sentenced, as a habitual criminal, to 30 to 60 years' imprisonment, with credit for time served since November 22, 1995. Krutilek then timely appealed to this court.

## ASSIGNMENTS OF ERROR

On appeal, Krutilek contends that the trial court abused its discretion in denying his motion to dismiss a juror, in allowing evidence of Krutilek's prior automobile theft convictions, and in failing to grant his motion for a new trial.

## DISCUSSION

*Motion to Dismiss Juror.*

Krutilek's first assignment of error is that the trial court erroneously denied his motion to dismiss a juror, thereby denying his right to a fair trial by an impartial jury, as guaranteed by the 6th and 14th Amendments to the U.S. Constitution.

■ The right to a speedy and public trial by an impartial jury is guaranteed by the 6th Amendment to the U.S. Constitution, as applied to the states through the 14th Amendment, and is also guaranteed by the Constitution of the State of Nebraska. See, Neb. Const. art. I, § 6 (guaranteeing the right of trial by 12-person jury in district court); Neb. Const. art. I, § 11 (guaranteeing one accused of crime "a speedy public trial by an impartial jury").

■ The competency of a juror is generally presumed, and the burden is on the challenging party to establish otherwise. . . . A juror is not incompetent merely because he is an acquaintance of one of the witnesses. . . . Retention or rejection of a juror is a matter of discretion with the trial court . . . .

*State v. Coffman*, 227 Neb. 149, 156, 416 N.W.2d 243, 248 (1987). Thus, the standard of review for the court's denial of Krutilek's motion to dismiss the juror is whether the trial court abused its discretion in the retention or rejection of the juror.

■ Nebraska case law is clear that no mistrial needs to be declared, nor a juror excused, where the juror can decide the

case fairly and impartially. See *State v. Coffman, supra.* See, also, *Auer v. Burlington Northern RR. Co.*, 229 Neb. 504, 428 N.W.2d 152 (1988) (juror who informed trial court of prior involvement in litigation with union after trial began was properly permitted to remain on panel where juror stated that he could serve as fair juror). Cf. *Dischner v. Loup River Public Power District*, 147 Neb. 949, 25 N.W.2d 813 (1947) (trial court's refusal to grant motion for new trial, based on alleged misconduct of juror in failing to reveal that his son-in-law's father was employed by defendant public power district in response to question asked on voir dire examination and in making remark about case favorable to defendant district before verdict was returned, was not error under evidence submitted on motion). Nebraska case law is equally clear that a mistrial must be granted where a juror cannot be fair and impartial. See *State v. Clifford*, 204 Neb. 41, 281 N.W.2d 223 (1979). See, also, *State v. McHenry*, 247 Neb. 167, 525 N.W.2d 620 (1995) (juror who has indicated inability to fairly and impartially determine guilt by refusing to subordinate his or her own personal views must be excused for cause). The difficulty with the factual scenario presented to this court in the case at bar is that the facts fall somewhere in the middle of the two rules.

The facts in the instant case are that, after trial had begun and two witnesses had testified, but before Goswick testified, the juror informed the court that he was casually acquainted with her, but that he had not known her last name; and thus, during voir dire, he did not associate his acquaintance as being one of the witnesses in the case. Upon questioning by the court, the juror stated that "I would hate to say that our friendship would sway me" and that he would "do [his] best" to set aside their acquaintance in determining the case. Thus, the juror never stated explicitly that he could be fair and impartial, nor did he state unequivocally that he could not be fair and impartial.

Despite the fact that the specific factual scenario now before this court has not heretofore been decided by the Nebraska Supreme Court, that court has decided two cases with somewhat similar factual patterns, *State v. Clifford, supra*, and *State v. Coffman, supra*. Although these cases are not determinative of the case at bar, they do provide guidance on how the issues before this court should be resolved.

In *Clifford*, a mistrial was granted as the result of possible juror bias where a juror came forward, after trial had begun, stating that he had not recognized the defendant by name during voir dire, but that after sitting through the morning evidence, he realized that he and his wife were well acquainted with the defendant's family and that he did not think he could be a fair and impartial juror. The court declared a mistrial without prejudice, which action was affirmed by the Supreme Court.

In *Coffman*, after testimony by a witness for the State, a juror informed the court that, contrary to what he had said on voir dire, he knew a witness but had not recognized her married name. The juror indicated off the record that it would not influence his ability to be an impartial juror, and the court summarized this for the record. Nevertheless, the defendant asked that the juror be excused and moved for a mistrial, which was denied by the trial court. The Supreme Court held that the trial court did not err in overruling the defendant's motion where no attempt was made to produce evidence that the juror was prejudiced and where there was no showing that the juror could not be fair and impartial in his judgment.

Although the facts in the instant case are similar to those in *Clifford* and *Coffman* up to a point, a major distinguishing factor exists that prevents this case from being treated the same as either *Clifford* or *Coffman*. Unlike *Clifford*, wherein the juror stated that he did not think he could be fair and impartial, in the instant case, the juror made no such statement. Likewise, *Coffman* is distinguishable because the juror in that case did state, albeit off the record, that he could be a fair and impartial juror, whereas, in the instant case, the juror made no such statement.

A factual situation similar to that of the instant case was addressed by the Texas Court of Criminal Appeals in *Brown v. State*, 913 S.W.2d 577 (Tex. Crim. App. 1996). In *Brown*, during voir dire questioning, a venireperson vacillated between stating that she would be able to follow the law and stating that she did not know for sure whether she could follow the law regarding the defendant's right against self-incrimination. The defendant challenged the venireperson for cause, which was denied by the trial court. On appeal to the Texas Court of Appeals, the defendant claimed that the trial court should have

granted his challenge for cause against the venireperson on the ground that she could not follow the law and give full effect to the defendant's Fifth Amendment right against self-incrimination. After reviewing the venireperson's testimony as a whole, the Texas Court of Appeals agreed with the defendant and held that the venireperson had a bias or prejudice against the law and that the trial court abused its discretion in denying the defendant's challenge for cause.

The case was then heard by the Texas Court of Criminal Appeals on the State's petition for discretionary review. The Texas Court of Criminal Appeals reversed the judgment of the Texas Court of Appeals, holding that appellate courts are bound to defer to the trial court's ruling in refusing to grant a challenge for cause. The Texas Court of Criminal Appeals held that

> [w]hile we might be inclined to agree with the Court of Appeals that the record reviewed as a whole portrays a venireperson who probably would not be able to set aside her personal biases against the law, we are nevertheless bound to defer to the ruling of the trial court in these circumstances. . . . The Court of Appeals erred in failing to so defer.

*Id.* at 581.

Although *Brown v. State, supra,* involved the challenge for cause of a prospective juror, it is only logical that deference to a trial court's determination with regard to the retention or dismissal of a juror would be applicable (and probably more so) after the jury has been seated and trial has begun, as are the facts in the instant case. Thus, we review the trial court's denial of Krutilek's motion to dismiss the juror, giving due deference to the trial court's determination.

The facts in the instant case are that, upon questioning by the trial court, the juror revealed that his relationship with Goswick was merely a casual acquaintance, not a close personal friendship, that they had not discussed the facts regarding this case, and that the juror would do his best to set aside their friendship in deciding this case. The trial court denied Krutilek's motion to dismiss the juror because the court determined that the juror had indicated that he would set aside his friendship with Goswick and attempt to decide the case based on the evidence. The trial

judge was in the best position to observe the juror's demeanor and to ascertain the meaning of the juror's remarks. Although we might have made a different determination had we been in the trial judge's shoes, after giving great deference to the trial judge's ruling, we cannot say that he abused his discretion in denying Krutilek's motion to dismiss the juror. See, *Brown v. State, supra*; *Perillo v. State*, 758 S.W.2d 567 (Tex. Crim. App. 1988) (when faced with record showing vacillating venireperson, reviewing court must afford great deference to trial court's discretion). Cf. *Riley v. State*, 889 S.W.2d 290 (Tex. Crim. App. 1993).

Furthermore, our determination finds support in decisions of courts from other jurisdictions. For example, in *State v. Green*, 336 N.C. 142, 166, 443 S.E.2d 14, 28 (1994), the North Carolina Supreme Court held that the trial court did not err in refusing to dismiss a juror for cause where the juror stated that he would " 'try' " " '[t]o the best of [his] ability' " to decide the case in accordance with the judge's instructions as to the law, but that he did not " 'believe there [was] any way [that he] could be absolutely sure' " that he could decide the case solely on the evidence presented in court, and that he " '[did not] believe' " that his prior knowledge about the case would substantially impair his ability to decide the case on the evidence presented.

In *People v. Cole*, 54 Ill. 2d 401, 412, 298 N.E.2d 705, 711 (1973), the Illinois Supreme Court held that a juror need not be dismissed for cause where the juror stated that his association with witnesses and attorneys would not influence his decision in the case and that he " 'believe[d] [he] could' " base his verdict solely on the evidence presented at court. Likewise, in *People v. Sandoval*, 733 P.2d 319, 320 (Colo. 1987), the Colorado Supreme Court, sitting en banc, held that the trial court did not abuse its discretion in refusing to grant the defendant's challenge for cause to a juror based on the juror's expressed statements that he had a great deal of respect for police officers and that if their testimony was consistent, it would " 'take something mighty convincing' " on the part of the defendant to convince him otherwise, where the juror indicated that he understood the State had the burden of proving the defendant guilty and that he would do his best to follow the court's instruction regarding examination and credibility of

both police and nonpolice witnesses. Additionally, in *State v. Bashor*, 188 Mont. 397, 614 P.2d 470 (1980), the Montana Supreme Court held that it was not error for the trial court to refuse the defendant's challenge for cause where a prospective juror stated that she thought she could be a fair juror.

Furthermore, if defense counsel in the case at bar felt that the juror's responses were indicative of bias or prejudice, it was counsel's obligation to seek specific answers to unequivocal questions. See *State v. Walton*, 796 S.W.2d 374 (Mo. 1990). See, also, *Curry v. State*, 910 S.W.2d 490, 493 (Tex. Crim. App. 1995) (alleged error that trial court erred in denying defendant's challenge for cause to venire member who stated that court proceedings had already created " 'some picture of guilt' " was not preserved for appellate review because no evidence was adduced from venire member that his conclusion would have affected his verdict).

We deem it necessary to reiterate that the record before this court does not include voir dire. Thus, we are unable to determine the extent of the voir dire questioning of the juror regarding his acquaintance with persons who might be called to testify in the instant case. Additionally, we feel compelled to point out that there is neither any evidence nor any allegation that the juror lied during voir dire, deliberately misled the court, or otherwise engaged in any sort of wrongdoing or juror misconduct. The juror simply did not associate Goswick's name with the individual with whom he was acquainted.

Counsel has the right to interrogate prospective jurors so as to elicit desired information before accepting the venire. *State v. Hankins*, 232 Neb. 608, 441 N.W.2d 854 (1989). If counsel desires specific information on voir dire, then counsel must ask specific questions. *State v. Ballard*, 237 Neb. 729, 467 N.W.2d 662 (1991). A party who fails to challenge a prospective juror for disqualification and does not use his peremptory challenges to remove said juror from the panel waives any objection to that juror's selection. *Id.*; *State v. Green*, 236 Neb. 33, 458 N.W.2d 472 (1990), *overruled on other grounds by State v. Tingle*, 239 Neb. 558, 477 N.W.2d 544 (1991).

In sum, affording deference to the trial court's determination in the case at bar, we determine that the trial court did not abuse its discretion in refusing Krutilek's motion to dismiss the juror.

*Prior Automobile Theft Convictions.*

Second, Krutilek contends that the trial court erred in allowing the State to produce evidence of his prior automobile theft convictions.

Section 27-404(2) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In reviewing the actions of a trial court in admitting evidence of other crimes under § 27-404(2) to determine if there was unfair prejudice in the admission of evidence, an appellate court considers (1) whether the evidence was relevant, (2) whether the evidence had a proper purpose, (3) whether the probative value of the evidence outweighed its potential for unfair prejudice, and (4) whether the trial court, if requested, instructed the jury to consider the evidence only for the purpose for which it was admitted. *State v. Yager*, 236 Neb. 481, 461 N.W.2d 741 (1990).

Krutilek's prior convictions were relevant to show, contrary to Krutilek's testimony, that he did not have permission to take Goswick's car, that Goswick did not want him to take the car in order to hide it from her ex-husband, and that she did not eventually just give the car to Kutilek. The prior convictions also had the proper purpose of showing absence of mistake and intent to steal the automobile. The probative value of the evidence outweighs its prejudicial effect, and since the jury instructions are not part of the record before us, we are unable to determine whether a limiting instruction was given. In any event, it does not appear from the record that a limiting instruction was sought. Therefore, the trial court did not err in allowing the State to present evidence of Krutilek's two prior automobile theft convictions.

*Motion for New Trial.*

Third, Krutilek contends that the trial court erred by denying his motion for a new trial, because he was denied a fair trial as

a consequence of the trial court's refusal to dismiss the juror and by the court's allowing evidence of Kutilek's prior convictions for automobile theft to be heard by the jury.

The standard of review for the denial of a motion for new trial is whether there was an abuse of discretion by the trial court. *State v. Severin*, 250 Neb. 841, 553 N.W.2d 452 (1996). An abuse of discretion means that the reasons for the ruling are untenable and unfairly deprive a litigant of a substantial right and deny a just result in the matter submitted for disposition. *Id.* For the reasons previously addressed in this opinion, we reject Krutilek's claims that there was an abuse of discretion by the trial court in denying his motion for a new trial.

## CONCLUSION

Because we have considered and rejected Krutilek's arguments on appeal, we affirm his conviction and sentence.

AFFIRMED.

IRWIN, Judge, dissenting.

I dissent, not simply because the juror used the phrase "I'll do my best." Rather, I dissent because of the entire calculus of facts regarding this issue. This is a felony criminal matter, wherein the accused's defense is that Goswick, this juror's friend, allegedly asked Krutilek to hide the car from her ex-husband and eventually told Krutilek to keep the car. This defense made Goswick's credibility crucial. Keeping this factual backdrop in mind, we are presented with a candid juror who states that he has known Goswick for a year, works with her, considers her a friend, and when asked by the court whether his friendship would sway him, can only respond, "I'll do my best."

As accurately expressed by the majority, the U.S. and Nebraska Constitutions guarantee a defendant the right to a speedy and public trial by an impartial jury. See, U.S. Const. amend. VI; Neb. Const. art. I, § 11. I also agree that the standard of review for a court's denial of a motion to dismiss a juror is whether the court abused its discretion in retaining or rejecting the juror. See *State v. Coffman*, 227 Neb. 149, 416 N.W.2d 243 (1987).

When analyzing the relevant facts involving the juror, I believe the majority unduly concentrates on the juror's state-

ment that he would "do [his] best" to set aside his friendship with Goswick and fails to give adequate consideration to the other key facts in analyzing the trial court's denial of Krutilek's motion to dismiss the juror.

The majority notes that the trial court refused to remove the juror because the trial judge concluded the juror "had indicated that he would set aside his friendship and attempt to decide the case based on the evidence." While I agree that a trial judge should be afforded appropriate deference in such matters because of his or her vantage point, the bill of exceptions herein records what the juror's responses were, and they do not indicate that he would set aside his friendship and attempt to decide the case based on the evidence. The response by the juror was equivocal and ambiguous. If, somehow, we were able to enter into people's minds, we would find that when some people say they will do their best, it means that they will put forth a Herculean effort to do so. On the other hand, we would also find that some persons who say they will do their best say so because they have serious reservations or hesitation in their own minds about their ability to do so. While further questioning may have revealed what the juror actually meant by his use of this ambiguous phrase, this was not done. Therefore, we are left not knowing what he meant.

In sum, the juror was honest and candid. However, he never expressly stated that he could set aside his bias regarding Goswick. The closest he could come was to say he would "do his best." The U.S. and Nebraska Constitutions guarantee a defendant the right to an impartial jury. The juror was telling the court that he was not positive he could be such a juror.

I would reverse, and remand for a new trial.